CHAMPAGNE LUMBER CO. et al. v. JAHN.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1909.)

No. 1,466.

1. CORPORATIONS (§ 253*) — STOCKHOLDERS' LIABILITY FOR CORPORATE DEBTS — EFFECT OF JUDGMENT AGAINST CORPORATION.

Stockholders of a corporation between whom its property has been divided cannot set up as a defense to a creditors' suit brought to enforce a judgment against the corporation a matter which was litigated in the action or which would not be ground for setting aside the judgment in equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1024; Dec. Dig. § 253.*

Stockholders' liability to creditors in equity, see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & Min. Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.]

2. CHAMPERTY AND MAINTENANCE (§ 1*) — ACTS CONSTITUTING — AIDING LITIGANT.

Advising a minor to ignore a settlement of a cause of action which was not binding on him and to bring suit, or aiding him financially in doing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so, does not constitute maintenance, where it does not appear that the person so aiding has any financial interest in the action.

[Ed. Note.—For other cases, see Champerty and Maintenance. Cent. Dig. § 3; Dec. Dig. § 1.*]

3. CREDITORS' SUIT (§ 18*)—DEFENSES.

In a creditors' suit by an assignee of a judgment, the adequacy of the consideration paid by him for the same cannot be questioned by the defendants.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. § 92; Dec. Dig. § 18.*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

For opinion below, see 157 Fed. 407.

The decree in favor of appellee, complainant below, was entered after a hearing on bill and answer. (C. C.) 157 Fed. 407.

In July, 1892, one Nyback, then 18 years old, was injured while working in the sawmill of appellant corporation. In April, 1896, he commenced in the court below an action at law to recover damages. Between that date and March, 1903, there were four trials of the case. Judgment for $2,000 and costs was entered in March, 1903, and was affirmed by this court in January, 1904. Thereafter execution was issued and returned nulla bona. Between 1892 and 1903 the lumber company quit doing business as a going concern, and its assets were divided among the stockholders by their mutual consent. The assets in the hands of appellants Stewart and Alexander when the bill herein was filed by appellee as assignee of Nyback were sufficient to pay appellee's claim in full, and there were no other unpaid claims against the corporation. The bill sought to reach the funds in the hands of Alexander and Stewart, who were the only holders of assets within the jurisdiction.

The contentions for reversal, namely, (1) that the judgment was obtained by means of Nyback's perjury, with appellee's connivance, (2) that appellee was guilty of maintenance, and (3) that appellee paid Nyback a grossly inadequate consideration for the assignment and therefore equity should not aid such an unconscionable speculation, are based on the following parts of the answer.

"(4) These defendants are informed and believe, and charge the fact to be, that, at the time the said John Nyback obtained a final judgment against the Champagne Lumber Company, he had not the means at hand nor at his command, nor the ability nor the inclination nor the intention, to further prosecute any action or proceedings to enforce the collection of said judgment, and that the complainant herein, with full knowledge of the facts concerning such action, and with full knowledge that the said John Nyback could not and would not, if let alone, further prosecute any action on the said judgments to enforce the collection thereof, and with full knowledge that the Champagne Lumber Company had no assets from which said judgments could be collected, and for the sole purpose of speculating upon the said judgments, solicited and and obtained from the said John Nyback the written assignments and conveyances of the said judgments set forth in the bill of complaint.

"(5) These defendants are informed and believe, and charge the fact to be, that, notwithstanding the recitals in said assignment and conveyance, the complainant herein paid to the said Nyback only a small and inadequate consideration for the said judgments, not exceeding the sum of fifteen dollars, while the said judgments at the time amounted to upwards of three thousand dollars. That the said assignment was taken for the sole purpose of speculation, and upon the chance of forcing a contribution from the various stockholders of the said defendant company."

"(7) Notwithstanding said verdict in the action in which said John Nyback was plaintiff and the said Champagne Lumber Company defendant, these defendants are informed and believe, and charge the fact to be, that the said verdict was obtained by the said John Nyback by the commission of perjury

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the said John Nyback upon the trial of said action in the Circuit Court of the United States for the Western District of Wisconsin, in this, to wit: The said action was based on the legal proposition and alleged grounds of liability that the said Champagne Lumber Company was negligent in maintaining and keeping unguarded, adjacent to a place where the said Nyback was instructed to work, a hole or chute, and in negligently failing to instruct the said Nyback as to his duties and how to perform his work, and warn him against the dangers of falling into the said hole and becoming injured thereby; that one of the defenses set up by the said Champagne Lumber Company was that the plaintiff, Nyback, was guilty of carelessness and negligence on his part, which directly contributed to the injury received; that on the trial of the said action the said Nyback, being first duly sworn, testified that previous to his falling into the hole in question and receiving his injury he did not know of the existence of the hole, he had never seen the hole, he had never been instructed as to his duties, and he had never been warned against the dangers of falling into the said hole, whereas, in truth and in fact, one Eric I. Odegard, previous to his employment, fully explained to him the nature of his duties and where and how to perform them, and instructed him how to perform them so that if he followed the instructions he would not have fallen into the said hole and received his injury, and also told him about the hole, and told him to look out and not to get into the hole himself; that at the time the said Nyback gave his testimony on the said trial in which said judgment was obtained he knew that his testimony was false, and knew that the said Eric I. Odegard could testify to the instructions and statements aforesaid; that notwithstanding said knowledge he deliberately perjured himself, and concealed from the court and the defendant Champagne Lumber Company the fact that the said Odegard had given such instructions and such information, and that the said Odegard could testify to that effect; that at the time the said action was commenced the said Odegard had become involved in a quarrel with the manager of the said Champagne Lumber Company, and when the Champagne Lumber Company's attorneys began to prepare for the trial of said action, on account of such quarrel said Odegard refused to disclose what he knew in regard to the transaction, and refused and failed to inform the Champagne Lumber Company, its officers, agents, and attorneys, of the facts aforesaid, and threatened that if he was forcibly compelled to attend and give evidence as a witness in the said action he would give testimony that would injure and endanger the Champagne Lumber Company's case, and that his testimony would not aid or benefit them, and refused to divulge or disclose any fact or evidence which was material to maintain the defense of said Champagne Lumber Company in the said action; that by reason thereof, and fully believing that no testimony existed to establish the facts known by the said Odegard, the said Champagne Lumber Company did not obtain the testimony of the said Odegard on any of the trials of said action; that there was no other witness by whom the Champagne Lumber Company could prove the facts within the knowledge of the said Odegard, and no officer or agent of said company knew of such facts; that the Champagne Lumber Company and all of its officers and agents used due care and diligence, but was never able to ascertain the fact that the said Odegard could or would, if placed under oath, testify to the facts aforesaid until after the verdict of the jury upon which final judgment was rendered in the said action; that by mere accident after such verdict the said Champagne Lumber Company learned of the facts within the knowledge of the said Odegard as aforesaid, and obtained the affidavit of the said Odegard setting forth such facts, and that if a new trial was had said Odegard would testify to such facts, and use said affidavit, together with other affidavits, to show diligence on the part of the defendant Champagne Lumber Company, in support of a motion for new trial in the said action; that on account of the strict rules in actions at law in said court the trial court held that the said Champagne Lumber Company was not entitled as a matter of law to a new trial in the said action; that the said Nyback willfully and maliciously opposed the granting of a new trial, with full knowledge on his part that the same had been procured by perjury as aforesaid; that by reason of the facts aforesaid and the willful false swearing of the said Nyback it would be inequitable for a court of equity to assist and aid in the enforcement of the collection of the

said judgments from the individual defendants in this action; that the complainant herein was fully aware, and cognizant of the act of the said John Nyback in committing perjury upon the trial of said action.

"(8) These defendants allege that the said John Nyback, for a good and sufficient consideration, soon after the happening of the said injury, and at the time he was 18 years of age, released the said Champagne Lumber Company from all damages resulting from said injury, and that the said release was fair and entirely free from fraud, and that the complainant herein was fully aware of the execution of said release to the said Champagne Lumber Company. These defendants are informed and believe, and charge the fact to be, that the said John Nyback was entirely and fully satisfied with the settlement with the Champagne Lumber Company, and that he did not intend to make any other or further claim against it for damages because of the said injury, and that he would not of his own accord have begun the suit aforesaid in the Circuit Court of the United States for the Western District of Wisconsin. These defendants are informed and believe, and charge the fact to be, that the complainant herein, together with divers other persons unknown to these defendants (well knowing of the full and fair settlement made between the said John Nyback and the said Champagne Lumber Company), and that the said John Nyback did not intend to make any further claim for damages against the Champagne Lumber Company, and with the intention of promoting and stirring up litigation, induced the said John Nyback to begin suit against the Champagne Lumber Company, and that they furnished the said John Nyback with the means wherewith to carry on said suit against the Champagne Lumber Company, and paid for the said John Nyback the costs and expenses incurred in said suit."

Reid, Smart & Curtis (John B. Sanborn, of counsel), for appellants.

D. B. Nash (Julius J. Patek, of counsel), for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). As equity looks beyond form to substance, the first thing to observe is that a corporation is an instrument by means of which individuals upon an agreed capital do an agreed business, with limited personal liability; that Stewart and Alexander and the other stockholders were in reality Nyback's adversaries in the action at law; and that Stewart and Alexander, with corporate assets in their hands, are in no better position than the corporation itself to challenge appellee's prima facie right to the action of the chancellor in aid of the execution.

Appellants say that appellee, by noticing the cause for hearing on bill and answer, confessed that the judgment at law was obtained by means of perjury on the part of Nyback. Such notice was rather an assertion by appellee that appellants were barred by the adjudication on the law side of the court from requiring appellee to relitigate the truth of the original declaration. The subject-matter of the alleged perjury as set out in the seventh paragraph of the answer was the subject-matter of Nyback's alleged cause of action. This subject-matter had been litigated to an end on the law side. A motion for a new trial on account of newly discovered evidence had been made and overruled. In the present answer there is no disclosure of any further newly discovered evidence; there is no showing of any act on the part of Nyback which misled appellants into not preparing to make a complete defense; in short, the answer fails to exhibit to the court on the equity side a single contention with respect to the justice of the original cause of action, or a single item of evidence in support of

the defense that was not considered and acted upon by the court on the law side. And so, under the authority of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, appellants virtually confess that their showing would be insufficient to warrant any affirmative relief against the judgment or against an execution thereon. But they contend that this same showing is enough to prevent a court of equity from granting any relief to appellee. If the contention is sound, a new way to defeat judgments at law would be opened. After a defendant has fully litigated an action at law, so that he cannot get a court of equity to set aside the judgment or enjoin the enforcement of an execution, let him hide his property or convey it to a trustee before a levy can be made; then, when proceedings in aid of the execution are instituted, let him answer that the judgment was obtained by means of the plaintiff's falsely testifying in support of his claim; and thereby the judgment is rendered worthless, for if the plaintiff demurs he is beaten, and if he replies and wins he gets his money, not by virtue of the judgment, but by means of the new litigation. We are not disposed to hold that a court of equity can be so used.

The averments in the eighth paragraph of the answer are insufficient to charge maintenance. The settlement with Nyback was made when he was a minor, and appellants knew that it was not binding. The action of appellee in inducing Nyback to disregard the settlement and to bring his action is not alleged to have been taken maliciously or for his own profit. It is not averred that appellee had any financial interest in the result of the lawsuit, and nothing appears from which to question that the relation between Nyback and appellee was such that it was entirely proper for appellee to give the advice and pay the costs and expenses. Under such circumstances, "the intention of promoting and stirring up litigation" would not be iniquitous.

From what has been said so far, our conclusion is apparent that there would be no want of equity in requiring Stewart and Alexander to pay the judgment if it was owned by Nyback. In this view the allegations of the fourth and fifth paragraphs of the answer with respect to the inadequacy of the consideration for the assignment become immaterial. It is enough that appellee can give a valid release.

The decree is affirmed.