### BOSS v. UNITED STATES et al.

(Circuit Court of Appeals, Ninth Circuit. June 18, 1923.)

No. 3996.

1. **Appeal and error** ⚖➡1009(3)—**Finding based on conflicting testimony should not be disturbed.**

A finding in a suit in equity based on conflicting testimony taken in open court should not be disturbed.

2. **Internal revenue** ⚖➡27(2)—**Evidence held to show sale of corporation stock not distribution of assets.**

In a suit by the United States to recover a tax levied against a corporation, evidence *held* to show that the transaction by which one owner of a one-half interest in the corporation transferred his interest to the owner of the one-half interest was a sale of the stock, and not a proceeding for the dissolution of the corporation and the distribution of its assets, though the corporation was dissolved by the purchaser thereafter, so that the seller of the stock was not liable for one-half of the taxes.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by the United States against C. L. Boss and others. Decree for the United States against the named defendant (285 Fed. 410), and that defendant appeals. Affirmed.

John F. Logan and Isham N. Smith, both of Portland, Or., for appellant.

John S. Coke, U. S. Atty., and Thos. H. Maguire, Asst. U. S. Atty., both of Portland, Or., for the United States.

John F. Reilly and Robert F. Maguire, both of Portland, Or., for appellee Peake.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The Boss & Peake Automobile Company was organized as a corporation under the laws of Oregon on

November 8, 1916, with a capital stock of $30,000, divided into 300 shares, of the par value of $100 each. While two qualifying shares were held by others, half of the capital stock was in fact owned by Boss, and the remaining half by Peake. The corporation continued in business from the time of its formation until dissolved, on or about June 22, 1917. On June 1, 1917, Peake transferred his stock to Boss in consideration of the sum of $26,137.15, which was paid by check. This amount was made up of the following items: Capital $15,000, earnings $10,000, back salary $1,079.17, chair and desk $57.98. The entire net income of the corporation from January to June 1, 1917, was $22,549.94. On May 1, 1920, the government imposed a tax on this net income under the Revenue Acts of September 8, 1916 (39 Stat. 756) and October 3, 1917 (40 Stat. 300), amounting to the sum of $12,405.30. Boss paid half of this tax, and the present suit was instituted by the government against the Automobile Company and against Boss and Peake individually, to recover the residue, with penalty and interest added. The validity or amount of the tax was not questioned; but Ross interposed a cross-complaint, claiming that upon the dissolution of the corporation, its assets were distributed to the stockholders and that Peake, having received half the assets, should pay half the tax. The court below entered a decree in favor of the government and against the defendant Boss, but dismissed the complaint as to the defendant Peake and likewise the cross-complaint. From this decree Boss alone has appealed.

The court below, after a painstaking review of the testimony, found that the transaction of June 1 was a transfer or sale of stock in fact as well as in name, and not a division or distribution of the property and assets of the corporation among stockholders. United States v. Boss & Peake Automobile Co. (D. C.) 285 Fed. 410.

[1, 2] We might content ourselves with the mere statement that this finding, based as it is on conflicting testimony taken in open court, should not be disturbed on appeal. But an independent review of the testimony leads to the same conclusion. The withdrawal of Peake from the business had been under consideration for some time before the final agreement was consummated. As early as March 26, 1917, a contract was prepared to that end. Whether this contract was suggested by Boss or by Peake is not very material, because it was entirely satisfactory to the former. By the terms of this contract Peake agreed to sell and deliver his 150 shares of stock to Boss on July 1, 1917, and Boss agreed to pay therefor 50 per cent. of the inventory value of the goods, wares, merchandise, and open accounts of the corporation, to be taken as of the latter date, within three days after the completion of the inventory. This contract apparently failed of execution because Peake refused to consent to the inventory method of fixing the selling price of his stock. There is nothing in the record to indicate any change of plan or purpose after that date. Probably the intention to dissolve the corporation was formed later. No doubt a dissolution was contemplated at least as early as June 1st, and probably Peake had notice of that intention. But why should that concern him? As soon as he had

disposed of his stock, the fate of the corporation rested in other hands, and he was thereafter powerless to insist upon a dissolution, even if he so desired.

The fact that the selling price of the stock was fixed at approximately half the value of the assets of the corporation is of little significance, in view of the fact that each party owned half of the stock. Furthermore, the price fixed was not exactly half the value of the assets, for certain contingent liabilities were assumed by Boss, and he was left more than half the value of the assets for that reason. Boss admitted that he assumed all known liabilities of the corporation and that Peake assumed none. This assumption would doubtless include the tax imposed under the act of 1916, but that was only a small fraction of the whole. On the entire record we are satisfied that the present claim that there was a dissolution of the corporation and a division and distribution of its assets among stockholders on June 1st is a mere afterthought, to escape liability for the tax. So far as the record discloses, there was then no reason why there should be a dissolution of the corporation, or a division and distribution of its assets, rather than a transfer and sale of the Peake stock, or why the transaction should assume one form rather than the other. There was a transfer of stock in form at least, and we are satisfied there was a transfer in fact and in law. It is unfortunate that the entire burden of the tax should fall upon one stockholder, but apparent injustice will often result from the imposition of a tax under a retroactive law. With such questions the courts have no concern, where a liability is lawfully imposed under a valid law.

There is no error in the record, and the decree is therefore affirmed.