## UPDIKE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit.
December 1, 1925.)

No. 6873.

**1. Internal revenue ☞28—Action to recover excess profits taxes from stockholders of dissolved corporation held not barred by limitation.**

Where corporation was dissolved in 1917 prior to approval of Revenue Act Oct. 3, 1917 (Comp. St. 1918, § 6336j et seq.), increasing excess profits tax and making same retrospective for entire calendar year, the fact that it had made returns under Revenue Act Sept. 8, 1916 (Comp. St. § 6336a et seq.), or Act March 3, 1917, did not start the running of limitations under Act Nov. 23, 1921, § 250 (Comp. St. Ann. Supp. 1923, § 6336⅛tt), as against government's suit for unpaid excess profit tax due under Act Oct. 3, 1917, to date of corporation's dissolution, where no return was filed under such act.

**2. Internal revenue ☞22—Congress may authorize Commissioner of Internal Revenue to prescribe administrative features.**

Congress has power to authorize Commissioner of Internal Revenue to prescribe formal administrative features of time and form to be observed in making returns under revenue acts.

**3. Internal revenue ☞28—Government, suing for taxes, need not anticipate and negative defense of limitation.**

Government, suing former stockholders of dissolved corporation to recover excess profits taxes, need not anticipate and negative defense of limitation, under Act Nov. 23, 1921, § 250 (Comp. St. Ann. Supp. 1923, § 6336⅛tt).

**4. Internal revenue ☞1—Congress may impose excess profits tax applicable to income or excess profits of entire year, though part of that year has already elapsed.**

Congress may impose excess profits tax applicable to income or excess profits of entire year, though part of that year has already elapsed.

**5. Taxation ☞1—A tax is not a debt in a strict sense.**

A tax is not a debt in a strict sense.

**6. Internal revenue ☞27(2)—Stockholders, receiving corporate assets on dissolution before payment of taxes due, take such assets impressed with a trust.**

Stockholders, receiving assets of dissolved solvent corporation, which has not paid excess profits or income taxes, take such assets impressed with a trust, and are liable in suit for such taxes; dissolution in such respect having same effect as insolvency, within rule that trust fund doctrine does not apply to solvent going concerns.

**7. Internal revenue ☞1—Congress may impose tax on corporation, which has previously, but during same year, effected a voluntary dissolution.**

Congress may impose income or excess profits tax on a corporation, which has previously, though during same year effected a vol-

*Rehearing denied February 16, 1926.

8 F.(2d)—58

untary dissolution, making income earned during portion of year when it was in existence measure of its liability.

**8. Internal revenue ☞9—Corporation dissolved before adoption of act increasing excess profits tax held liable for additional taxes under that act.**

Corporation, which, after making returns and paying tax under Act Sept. 8, 1916 (Comp. St. § 6336a et seq.), and Act March 3, 1917, effected a voluntary dissolution before adoption of Act Oct. 3, 1917, held, under Rev. St. Neb. 1913, § 555, and Act Oct. 3, 1917, tit. 2, §§ 212, 1001, 1004, 1005 (Comp. St. 1918, §§ 6336⅝m, 6348a, 5896b, 6349b), Act Sept. 8, 1916, tit. 1, pt. 2, § 13 (Comp. St. § 6336m), and Treasury Regulations, regulation 33, art. 61, liable for additional tax under 1917 act, which was recoverable from former stockholders, to whom its assets had passed.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by the United States against Nelson B. Updike and others. Decree for the United States (1 F.[2d] 550), and defendants appeal. Affirmed.

Francis A. Brogan, of Omaha, Neb., (Anan Raymond and Alfred G. Ellick, both of Omaha, Neb., on the brief), for appellants.

James C. Kinsler, U. S. Atty., of Omaha, Neb. (Ambrose C. Epperson, of Clay Center, Neb., and George A. Keyser and Andrew C. Scott, Asst. U. S. Attys., both of Omaha, Neb., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

VAN VALKENBURGH, Circuit Judge. July 1, 1910, the Missouri Valley Elevator Company was duly organized as a corporation under the laws of the state of Nebraska, with a capital stock of $150,000. Its principal office and place of business was at Omaha, in said state. For the purpose of return, assessment, and computation of taxes due under the revenue laws of the United States, it had established a fiscal year beginning on July 31 and ending May 31. On August 1, 1917, it held a meeting of all its stockholders, at which time it was voted that a deed of conveyance of all its real estate, together with its elevator, should be made to the Updike Grain Company, and that by bill of sale all of its personal property should be delivered to said Updike Grain Company. It was further voted that the corporation should immediately be dissolved in accordance with laws of the state in such

cases made and provided. . The officers of the corporation were authorized and directed to execute the necessary certificate of dissolution. This certificate was duly filed in the office of the secretary of state of the state of Nebraska on August 2, 1917. The stockholders of said corporation at that time were the defendants Nelson B. Updike, Elmer A. Cope, Edward Updike, Otis M. Smith, Gorton Roth, and Robert B. Updike, who held the entire 1,500 shares of the capital stock. At the same time, or shortly thereafter, at any rate prior to October 4, 1917, all the money and property of said corporation, inuring from the transfer above stated and otherwise, was distributed to said stockholders in proportion to their holdings.

October 3, 1917, there was approved an act of Congress entitled "An act to provide revenue to defray war expenses and for other purposes" (Comp. St. 1918, § 6336j et seq.). It was provided therein that it should take effect on the day following its passage, to wit, October 4, 1917. This act, among other things, provided for certain increases in excess profits taxes over those provided in acts then in existence. These prior acts, with which we are more specifically concerned, are those of September 8, 1916 (Comp. St. § 6336a et seq.), and March 3, 1917 (39 Stat. 1000). It is conceded, or at least not disputed, that the dissolved corporation had paid all excess profits taxes due under these prior acts, including that part of its fiscal year between January 1 and May 31, 1917. The Act of October 3, 1917, provided that any amount theretofore paid on account of the tax imposed under the Act of March 3, 1917, should be credited toward the payment of the tax imposed by title 2 of the Act of October 3, 1917. Under the prior acts certain returns by the taxpayer were provided for, the same to be made at stated periods, and penalties were provided for failure to file and for the making of false returns. The Missouri Valley Elevator Company made all returns required under acts prior to that of October 3, 1917, including that part of the year 1917 ending May 31.

The Act of October 3, 1917, was made retrospective, to include all of the calendar year in which it was passed. By section 212 of title 2 of the act it was provided:

"That all administrative, special, and general provisions of law, including the laws in relation to the assessment, remission, collection, and refund of internal revenue taxes not heretofore specifically repealed, and not inconsistent with the provisions of this title are hereby extended and make applicable to all the provisions of this title and to the tax herein imposed, and all provisions of title 1 of such Act of September eighth, nineteen hundred and sixteen, as amended by this act, relating to returns and payment of the tax therein imposed, including penalties, are hereby made applicable to the tax imposed by this title." Comp. St. 1918, § 6336⅜m.

Section 13, pt. 2, title 1 of the Act of September 8, 1916 (39 Stat. 771; Comp. St. § 6336m), makes specific provision for such returns. In section 1001 of its administrative provisions the Act of October 3, 1917, provided as follows:

"That all administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this act, and every person, corporation, partnership, or association liable to any tax imposed by this Act, or for the collection thereof, shall keep such records and render, under oath, such statements and returns, and shall comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may from time to time prescribe." Comp. St. 1918, § 6348a.

And section 1004 thereof is in the following language:

"That whoever fails to make any return required by this act or the regulations made under authority thereof within the time prescribed or who makes any false or fraudulent return, and whoever evades or attempts to evade any tax imposed by this act or fails to collect or truly to account for and pay over any such tax, shall be subject to a penalty of not more than $1,000, or to imprisonment for not more than one year, or both, at the discretion of the court, and in addition thereto a penalty of double the tax evaded, or not collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected, in any case in which the punishment is not otherwise specifically provided." Comp. St. 1918, § 5896b.

These last two sections quoted are supplemented by section 1005, which provides as follows:

"That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, is hereby authorized to make all needful rules and regulations for the enforcement of the provisions of this act." Comp. St. 1918, § 6349b.

Pursuant to the authority thus conferred the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, made and promulgated article 61 of regulations 33 of the United States Treasury Department as follows:

"*Corporation Dissolved Prior to October 4, 1917.*—A corporation which was dissolved in 1917, prior to passage of the War Revenue Act of October 3, 1917, is subject to tax under the Act of September 8, 1916, as amended, and also to the war income tax and the war excess profits tax imposed by the Act of October 3, 1917. Brady et al. v. Anderson, 240 F. 665, 153 C. C. A. 463. A corporation so situated will make a return on revised form 1031, covering the period in 1917 during which it was in business prior to its dissolution. If it shall have previously made a return covering this period, and shall have paid any excess profits tax under the Act of March 3, 1917, it shall be entitled to credit for the amount of such tax so paid against any excess profits tax assessable against it under title 2 of the Act of October 3, 1917."

This form 1031 was duly furnished to the Missouri Valley Elevator Company, and was returned in blank to the collector of internal revenue for the district of Nebraska, with a letter from the secretary of said corporation advising of the dissolution, which said letter was tantamount to a denial of any liability of the corporation for excess profits taxes under the Act of October 3, 1917, and to a refusal, therefore, to make any return under said act.

The Revenue Department thereupon made a computation of the excess profits tax due from said corporation for that part of the year 1917 ending May 31, during which period the corporation was engaged in business prior to its dissolution, fixing the amount at $34,561.92, for the recovery of which it brought suit in the District Court for the District of Nebraska against the stockholders, appellants herein. That court found in favor of the United States, and by its decree found the amount due the government, including interest, from March 15, 1918, to be the sum of $50,380.35. It accordingly adjudged that "each and every one of the above-named defendants is hereby ordered and directed to pay to complainant the above-mentioned sum of money sufficient to satisfy this decree, or so much thereof and to the extent that each has received the assets of Missouri Valley Elevator Company prior to the dissolution thereof." From this decree and judgment this appeal is taken.

The contentions of appellants are: First, that the Act of October 3, 1917, was not applicable to corporations not in existence at the time of the passage of the act; second, that that act created no liability for taxation upon the part of stockholders who had received a distribution of the assets of a corporation prior to the act, which corporation had been dissolved prior to the passage of the act; third, that, if it sought so to do, its provisions are in violation of the Constitution of the United States; fourth, that the Act of October 3, 1917, required the filing of no other returns by the dissolved corporation than those which were filed by it in the year 1917 under the provisions of the Act of September 8, 1916; fifth, that such returns were those contemplated by section 250d of the act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛tt), and that under that section this suit by the government is barred. [1] It is also urged that the court erred in rendering a joint judgment against all of the defendants. That part of section 250 of the Act of November 23, 1921, upon which appellants rely as barring this action by limitation reads as follows:

"No suit or proceedings for the collection of any such taxes due under this act or under prior income, excess profits, or war profits tax acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed."

Prior to 1918 there had been no limitation upon the bringing of suits of this nature by the government. Holmes, Federal Taxes (1923 Ed.) p. 1032. By the act, in terms, the limitation is restricted to cases in which "such return was filed." If, as contended by appellants, no return was required by the Act of October 3, 1917, then section 250 has no application. Their insistence is, however, that the returns made under the prior acts are such as bring them within the provisions of the limitation section, with respect to recoveries for taxes under the Act of October 3, 1917. To this we cannot agree. Returns under the Acts of 1916 and March 3, 1917, obviously could not cover the increased taxes imposed by the later act. For the ascertainment of the latter a return would be logical and essential, and its requirement accords with the procedure established by Congress in all revenue laws of this nature.

[2] The sections of the act above quoted clearly call for such returns, and it was within the power of Congress to authorize

the Commissioner of Internal Revenue to prescribe the formal administrative features of time and form in the making of such returns. The provision that "any amount heretofore or hereafter paid on account of the tax imposed by such title 2 shall be credited toward the payment of the tax imposed by this title" does not negative the requirement of a return under the Act of October 3, 1917, nor make such a return supplemental to those previously furnished. It might very well be that no previous return had been made by one subject to tax under prior acts. In such case a return must be made under the Act of October 3, 1917, and not under those prior acts. This provision was inserted for the protection of the taxpayer against double taxation for the same period, and has to. do with payments made, not with the returns from which such payments were computed.

[3] In this case a return was required, and none made, in a true legal sense. Therefore the limitation invoked has no application. That appellee in its bill of complaint made reference to returns previously filed by the Missouri Valley Elevator Company, and characterized them as incorrect, misleading, and false, has no significance. The government sues for excess profits taxes alleged to be due under the Act of October 3, 1917. The bar by limitation, if it existed, was a defense which it was incumbent upon the defendants to interpose and for which the complainant in its pleading need assume no responsibility. It was unnecessary for the government in its bill to anticipate the defense of limitation by alleging either that no return was filed, or that the one filed was false in any particular. The gist of the complaint is contained in paragraph 10 thereof.

"Thereafter the Commissioner of Internal Revenue on or about the ———— day of November, 1919, duly assessed against the said corporation an additional tax in the sum of $34,561.92 for the said taxable period beginning July 31, 1916, and ending May 31, 1917; and by reason of the income so received by said corporation as aforesaid during the said taxable period aforesaid, the corporation under the provisions of the said Revenue Act of 1917 amending the aforesaid Revenue Act of 1916, became and now is indebted to the complainant for additional income and excess profits tax in the aforesaid sum of $34,561.92, and the said sum remains yet due and unpaid."

Thereby, in conformity with the provision to which reference has been made,

credit is given for like taxes theretofore paid for the period covered by the later act. This disposes of the fourth and fifth contentions.

[4] The provisions of the Act of October 3, 1917, were applicable to the income of that entire year. The right of Congress to impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed, is not open to question. Brushaber v. Union Pac. R. R. Co., 240 U. S. 1–20, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; United States v. Boss & Peake Automobile Co. (D. C.) 285 F. 410; United States v. Chicago & E. I. Ry. Co. (D. C.) 298 F. 779; Holmes, Federal Taxes (1923 Ed.) p. 1213; Beam v. Hamilton (C. C. A.) 289 F. 9–12.

The rule would, of course, be the same with respect to excess profits; and inasmuch as the Act of. October 3, 1917, applied to all corporate operations within that calendar year, it would cover logically all such conducted during any fractional part of that year. Therefore, corporations which had engaged in business and realized taxable excess profits during a part of the year 1917, for example, between January 1 and May 31 thereof, as in the present case, would be liable for the taxes imposed by this act, although they may have been dissolved by voluntary action prior to the passage of the act. The law, by its terms, is expressly made to apply to all business transactions of the nature therein described during the entire calendar year, and the whole must necessarily include the part.

[5] It is true that a tax is not a debt in a strict sense. Meriwether v. Garrett, 102 U. S. 472–513, 26 L. Ed. 197. "But whether the government may recover a personal judgment for a tax depends upon the existence of the duty to pay, for the enforcement of which another remedy has not been made exclusive. "Whether an action for debt is maintainable depends, not upon who is plaintiff, or how the obligation was incurred; but the action lies wherever there is due a sum either certain or readily reduced to certainty." United States v. Chamberlin, 219 U. S. 250, 31 S. Ct. 155, 55 L. Ed. 204.

In discussing what property of a corporation on dissolution the courts may reach and apply to the discharge of its obligations, the Supreme Court in Meriwether v. Garrett, 102 U. S. loc. cit. 518 (26 L. Ed. 197) said: "We answer, it is the private property of the corporation; that is, such as it held in

its own right for profit or as a source of revenue, not charged with any public trust or use, and funds in its possession unappropriated to any specific purpose. In this respect the position of the extinct corporation is not dissimilar to that of a deceased individual."

While the tax is not upon the property, but is against the citizens and residents of the United States personally, the latter are chargeable in respect to income received by them, which may be followed wherever it may be found, except in the hands of third persons for value and without notice. Brady v. Anderson (C. C. A., Second Circuit) 240 F. 665, 153 C. C. A. 463. In that case it was held that, upon the death of a person subject to the tax under a retrospective statute passed after his decease, the estate in the hands of his executors is likewise subject thereto. The effect of making the act retrospective was to make it apply to the deceased, exactly as if it had been enacted on the date covered by its provisions. In the present case, the Act of October 3, 1917, would apply to the Missouri Valley Elevator Company as though it were passed on January 1, 1917.

[6] It must be conceded that if the corporation was subject to this tax, and if its property distributed upon dissolution constitutes a trust fund on behalf of creditors or those entitled to be paid out of its assets, the stockholders who received its property in distribution must be held to respond to the extent of their receipts under such distribution. The trust fund doctrine has been held not to apply to solvent going concerns; but dissolution, in this respect, has the same effect as insolvency. Broughton v. Pensacola, 93 U. S. 266-269, 23 L. Ed. 896; McDonald v. Williams, 174 U. S. 397-403, 19 S. Ct. 743, 43 L. Ed. 1022. Its property then becomes a trust fund for the benefit of creditors and those sustaining a like position under the law; and, if that property has been distributed to stockholders, it remains impressed with the same trust. United States v. McHatton et al. (D. C.) 266 F. 602; United States v. Gen. Inspection & Loading Co. (D. C.) 192 F. 223; United States v. Boss & Peake Automobile Co. et al. (D. C.) 285 F. 410; affirmed in (C. C. A.) 290 F. 167; Mumma v. Potomac Co., 8 Pet. 281-286, 8 L. Ed. 945; Fidelity Trust Co. v. McKeithan Lumber Co. (D. C.) 212 F. 229-240; Jahn v. Champagne Lumber Co. (C. C.) 157 F. 407, affirmed (C. C. A., Seventh Circuit) 168 F. 510, 93 C. C. A. 532.

In the latter case Judge Baker said: "As

equity looks beyond form to substance, the first thing to observe is that a corporation is an instrument by means of which individuals upon an agreed capital do an agreed business, with limited personal liability."

In Sawyer v. Hoag, 17 Wall. 610-623 (21 L. Ed. 731), it was held: "After all, this artificial body is but the representative of its stockholders, and exists mainly for their benefit, and is governed and controlled by them through the officers whom they elect. And the interest and power of legal control of each shareholder is in exact proportion to the amount of his stock. It is therefore but just that when the interest of the public, or of strangers dealing with this corporation is to be affected by any transaction between the stockholders who own the corporation and the corporation itself, such transaction should be subject to a rigid scrutiny, and if found to be infected with anything unfair towards such third person, calculated to injure him, or designed intentionally and inequitably to screen the stockholder from loss at the expense of the general creditor, it should be disregarded or annulled so far as it may inequitably affect him."

In Wood et al. v. Dummer et al., 30 Fed. Cas. 435, No. 17,944, Mr. Justice Story places a dissolved corporation, left without property because of distribution to its stockholders, in the same category with one that is insolvent, and says: "If the capital stock is a trust fund [and he holds that it is], then it may be followed by the creditors into the hands of any persons, having notice of the trust attaching to it. As to the stockholders themselves, there can be no pretense to say, that, both in law and fact, they are not affected with the most ample notice. The doctrine of following trust funds into the hands of any persons, who are not innocent purchasers, or do not otherwise possess superior equities, has been long established."

It has, therefore, been held that the assets of a dissolved corporation may be followed as in the nature of a trust fund into the hands of stockholders, and that, where the debt was not judicially established by action against the corporation before its dissolution, it may be presented and its validity determined in the equitable suit to enforce such liability of the stockholders. McWilliams v. Excelsior Coal Co. (C. C. A.) 298 F. 884; Champagne Lumber Co. v. Jahn (C. C. A., Seventh Circuit) 168 F. 510-513, 93 C. C. A. 532. And this doctrine has been applied in cases similar to the one before us. Brady et al. v. Anderson, 240 F. 665, 153 C. C. A. 463; United States v. McHatton et al. (D.

C.) 266 F. 602; United States v. General Inspection & Loading Co. (D. C.) 192 F. 223; United States v. Boss & Peake Automobile Co. et al. (D. C.) 285 F. 410; United States v. Boss & Peake Automobile Co. (C. C. A., Ninth Circuit), 290 F. 167. All the stockholders must be made parties defendant.

[7] The main question raised by appellants is whether the government by this Act of October 3, 1917, has taxed, or can tax, a corporation which has by voluntary dissolution passed out of existence as a going concern, and, if so, whether it can recover from the stockholders to the extent of their receipt of the corporate property through distribution. Appellants in their brief concede, as they must, that "the government has at all times throughout a calendar year the right at the end of the year or thereafter to impose internal revenue taxes retrospectively to the extent of making the past year's income the measure of an existing taxpayer's liability, and that, throughout the calendar year in question, the taxpayer does business under the shadow of this inchoate right." We perceive no sound reason why this conceded right in the government may not be exercised at any time within the calendar year, and so it has been held. The shadow of this conceded inchoate right, with the notice it imparts to the corporate taxpayer, is likewise cast continuously upon the business conducted throughout such year. Furthermore, as stated by the trial judge, and as conceded in brief and argument, the form of this action, as against the stockholders, without judgment first being obtained against the corporation is not assigned as error, nor relied upon by appellants, nor could it be under uniform decisions under the circumstances of this case.

[8] Passing, then to the merits, as disclosed by the pleadings and record, it is our judgment that the corporation itself became liable for the excess profits tax accruing from its operations during that part of 1917 that it was engaged in business. Dissolution by the express terms and necessary implications of the Nebraska statutes did not discharge it from its obligations. Section 7, article 1, chapter 14, title "Corporations," Revised Statutes Nebraska 1913, page 214 et seq.

Appellants concede this inchoate right to impose a retrospective tax. The tax is personal, but it may be satisfied out of any property of the obligor which can be found. We need waste no time in considering whether it is a debt in strict sense. There is little practical difference between a debt and an obligation to pay; therefore it must be conceded, we think, that the corporation, though dissolved, if it still had property in its possession, could be made to respond to this demand of the government. What, then, of the stockholders? In receiving their distributive shares, they have not dealt at arm's length with the corporation. They do not occupy the position of strangers, who have taken for value, in good faith, and without notice of corporate obligations either fixed or potential. They have not merely diminished the corporate estate, as by dividends declared. They have absorbed the corpus. They have converted their stock certificates into the concrete property which those certificates represented, and have thereby rendered the corporation itself unable to meet its obligations. It is unnecessary to hold that they are charged with constructive knowledge of the potential right of retrospective taxation, whose shadow hovered over the corporation itself, for the record points strongly to actual knowledge as the moving cause of their action in bringing about and hastening the dissolution and the contemporaneous transfer and distribution of assets. The legislation which culminated in the Act of October 3, 1917, was well advanced in July. It is a matter of common knowledge that such action in Congress was, and is, closely watched by those likely to become subject to its benefits or its burdens. The stockholders' meeting was held August 1, 1917. The resolution to dissolve was passed on that date, and during the month, as stated in the answer, "the resolution was carried into effect, the property of the corporation was duly conveyed to the purchaser, the cash received therefor, and the money on hand prior thereto, was immediately distributed among the stockholders."

It may be noted that the "purchaser" was Updike Grain Company, a corporation, and that among the six appellants, defendants below, are Nelson B. Updike, holder of 1,000 shares, Edward Updike, holder of 256 shares, and Robert B. Updike, holder of 81 shares, aggregating 1,337 of the 1,500 shares of the capital stock of the dissolved corporation. We cannot shut our eyes to the obvious fact that the Missouri Valley Elevator Company was dissolved with full knowledge on the part of its stockholders of this impending legislation and for the primary purpose of evading taxation thereunder. In the situation presented, the appellant stockholders must respond for the corporation in pro-

portion to the amounts received in distribution.

It follows that the decree below should be and the same is affirmed.

<hr>

