**UNITED STATES v. UPDIKE et al.**

**UPDIKE et al. v. UNITED STATES.**

Circuit Court of Appeals   Eighth Circuit.
March 21, 1929.

Rehearing Denied May 29, 1929.

Nos. 8241, 8244.

James C. Kinsler, U. S. Atty., of Omaha, Neb., and I. R. Blaisdell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Philip M. Aitken, of Lincoln, Neb., Ambrose C. Epperson, George A. Keyser, and William J. Froelich, Asst. U. S. Attys., all of Omaha, Neb., Helen R. Carloss, Atty., Department of Justice, of Washington, D. C., and Sewall Key, Sp. Asst. Atty. Gen., on the brief), for the United States.

Francis A. Brogan and Alfred G. Ellick, both of Omaha, Neb. (Anan Raymond, of Omaha, Neb., on the brief), for defendants Updike and others.

Warren H. Howard, Frank S. Howell, William A. Schall, and Frank E. Sheehan, all of Omaha, Neb., for defendants Roberts and others.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

McDERMOTT, District Judge. This action was filed April 28, 1927, to impress a trust upon certain assets of the Updike Grain Company on account of taxes owing the

**2**

government, and to require the defendants to account for such taxes up to the value of the corporate assets received by them. The taxes in question are excess profits taxes under the law of October 3, 1917, are for the taxable period ending June 30, 1917, and amount to $373,911.54. The corporation discontinued business June 30, 1917, and was formally dissolved August 27, 1917. Assets far in excess of the tax claimed were distributed to the stockholders, defendants herein; that is, Nelson Updike took over the property and accounted to the other stockholders for their share in cash. In January, 1920, an assessment was made against the corporation for this tax. The principal question involved is whether this action is barred by the statute of limitations.

Before considering the applicable statutes, it must first be determined whether or not this is a "no return" case. It is conceded that the corporation made no return under the October 3, 1917, act (40 Stat. 300), that is, no officer of the corporation signed or swore to any return, and that, when requested to make a return, the former secretary declined, because the corporation was out of existence, had no property, and owed no debts. It appears, however, that on July 25, 1917, the corporation filed an income tax return, and on August 30, 1917, filed an excess profits tax return, both for the period in question, and both disclosing its invested capital, its indebtedness, and its net income. These returns were on the forms then provided, and disclosed the tax due under the statutes then in force. On September 28, 1917, an amended excess profits tax return was filed. These taxes were paid. A different tax was levied by the Act of October 3, 1917, and different forms of return prescribed, which the corporation declined to make.

Article 61, Regulation 33, expressly provides for a particular form of return in case of a corporation dissolved prior to October 3, 1917. Congress has power to prescribe forms for returns. Updike v. U. S., 8 F.(2d) 913 (8 C. C. A.). After the corporation declined to make a return under the October, 1917, law, the government agents audited the books, and incorporated the result of such an audit on a return blank, which was not signed or sworn to, but which was made the basis of the assessment. Although the evidence is not entirely clear, we are of the opinion that the tax due under the October, 1917, law could not have been accurately computed from the information given by the returns filed by the company under the earlier statutes. It is clear, however, that the government auditors secured from the books all the information necessary to make the assessment which was made under the October, 1917, law. In fact, the government vouches for the completeness of this information, by suing on it.

It is largely a legal question of whether this is a "no return" case. When the statutes of limitation refer to a "failure to file a return," do they mean a return "signed by the taxpayer"? If they do, this is a "no return" case. On the other hand, if they mean to exclude from the limitations statute only those cases in which the government is not aware of any tax liability on account of a failure to file a return, then this is not a "no return" case, for the government had more and better information from the audit than it could get from a return.

This particular question has been ruled by this court in the case of Updike v. U. S., 8 F.(2d) 913. In that case another of the Updike companies dissolved during the summer of 1917, and declined to make a return on the forms prescribed by the commissioner for the collection of taxes under the October, 1917, law, and for the same reason as that given here. In that case, too, the corporation had made returns under the earlier laws, before dissolution. The brief for appellees states: "Returns had been filed for that company in the same manner as they had been filed for the Updike Grain Company."

There, as here, the government made its own audit. It is said in argument that the record in that case does not disclose the extent of the audit made, and that the record in this case does. That is not material. The court, in the cited case, was advised of the earlier returns, the refusal to make a return after dissolution under the new law, and that the "Revenue Department thereupon made a computation" of the tax due. The case is therefore controlling. We quote excerpts from the opinion:

"To this we cannot agree. Returns under the acts of 1916 and March 3, 1917 [39 Stat. 756, 1002], obviously could not cover the increased taxes imposed by the later act. For the ascertainment of the latter a return would be logical and essential, and its requirement accords with the procedure established by Congress in all revenue laws of this nature.

"2. The sections of the act above quoted clearly call for such returns, and it was within the power of Congress to authorize the Commissioner of Internal Revenue to prescribe the formal administrative features of time and form in the making of such returns. The provision that 'any amount heretofore

or hereafter paid on account of the tax imposed by such title 2 shall be credited toward the payment of the tax imposed by this title' does not negative the requirement of a return under the Act of October 3, 1917 [40 Stat. 300], nor make such a return supplemental to those previously furnished. It might very well be that no previous return had been made by one subject to tax under prior acts. In such case a return must be made under the Act of October 3, 1917, and not under those prior acts. This provision was inserted for the protection of the taxpayer against double taxation for the same period, and has to do with payments made, not with the returns from which such payments were computed.

"3. In this case a return was required, and none made, in a true legal sense. Therefore the limitation invoked has no application."

This decision is not only controlling, but in our judgment is right. This company discovered no obstacle in the way of making an amended return, under the old law, on September 28, 1917, after dissolution, and no difficulty in finding officers to file claims for abatement of earlier taxes, after that date. It could have made one under the October law. It knew the government had power to make a tax retroactive. As a matter of fact the bill passed in October was well along in preparation in July. Certainly a corporation cannot formally dissolve, decline to pay a tax that its neighbors pay, claim an inability to make a return, and then seek protection behind a statute of limitations that expressly excludes cases where no return is filed. It is argued that the 1921 law uses the phrase "required return," while the later statutes simply say "return." This change was to do away with quibbling as to the correctness of the return, or whether the return or amended return governed, and cannot alter the decision in the first Updike Case above referred to. It is therefore a no return case.

This brings us to the main contention, the statutes of limitations. We may well start with the proposition that lapse of time does not destroy the government's right to collect a tax, unless some statute says so. While this is a case against transferees, we must consider that it is a proceeding in court to collect a tax, notwithstanding that it is an action against transferees. Since the argument herein, the case of Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. ——, has been decided by the Supreme Court of the United States (No. 58, Jan. 2, 1929). That was an action in equity against the stockholders of a dissolved corporation "to impress the assets received by them with a trust and to recover the amount of taxes assessed against the corporation." Id. (C. C. A.) 22 F.(2d) 249. That is this action. The Supreme Court held such action was "a proceeding * * * for the collection of * * * taxes" and was barred.

We turn now to the statutes of limitation in the various acts, bearing in mind that these statutes are not retrospective, unless expressly so. U. S. v. Magnolia Pet. Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509; Russell v. U. S., supra. The 1918 statute—40 Stat. 1057, 1083, c. 18, § 250(d)—does not bar the claim, for the limitations therein apply only to the taxes levied by that act. The 1921 law —section 250(d), Revenue Act 1921 (42 Stat. 265)—does not bar the claim because the limitations therein contained start "after the return was filed." The 1924 law—section 278(d), Revenue Act 1924 (26 USCA § 1061 note)—for the first time starts the statute with the assessment, except for suits without assessment. This section is similar to section 278(d) of the 1926 law (26 USCA § 1061). It has been expressly held, however, that section 278 of the 1924 act has no "possible application to cases where assessment had been made prior to June 2, 1924." Russell v. U. S., supra. There is left, then, the 1926 law.

The 1926 law—section 278(d)—provides:

"(d) Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior act of Congress has been made (whether before or after the enactment of this act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

Three other amendments were made in 1926, in paragraphs 2, 3, and 4 of the preceding section (277; 26 USCA § 1057), which are of significance. Prior to the 1926 amendments, these paragraphs provided, "and no proceeding in court for the collection of such taxes shall be begun" after the period fixed in each paragraph for assessment. That is, prior to 1926, the period for assessment or court action were the same; the government had to assess or sue, or assess and sue, within the particular period, say five years. But in 1926 in all three para-

graphs the limitation on proceedings in court was qualified by inserting the words "without assessment," so that the paragraphs now read, "and no proceeding in court *without assessment* for the collection of such taxes shall be begun," etc.

Take these amendments in connection with 278(d), quoted above, and the idea of Congress is clear and inescapable. Congress fixed one period (say five years) for the initial move against the taxpayer, whether it be by assessment or suit without assessment; and a different period (6 years) for the second move, distraint or court proceedings *after* assessment. For the second move, we look to 278(d), and that alone.

Now, there was an assessment here, made in January, 1920. So 278(d), law of 1926, governs, and nothing else. Let us, then, see whether this section bars this action.

(1) "Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior act of Congress. * * *" It is expressly retroactive, and covers taxes imposed by the 1917 law; thereby differing from section 278(d) of the 1924 act.

(2) "Has been made (whether before or after the enactment of this act) within the statutory period of limitation properly applicable thereto. * * *" The assessment was made in this case in 1920. It is vigorously urged that, in a no return case, there is no period of limitation for assessment, and therefore this section does not apply. But the argument does not persuade. The intent in the words "within the statutory period of limitation applicable thereto" is too plain for mistake. This section authorizes the government to sue after a proper assessment; the Board of Tax Appeals had been created, and Congress wanted to extend the time for suit for a reasonable period *after* assessment, so that appeals to the Board could be prosecuted, etc. But Congress did not want to give that right to sue if the assessment was barred by the statute when it was made. Therefore Congress qualified the right to sue by providing that the assessment must have been made in time. The assessment here was made in time, and that phrase has served its purpose.

(3) "Such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this act). * * *" It was argued that this is an equitable proceeding to impress a trust upon certain assets, and is not a "proceeding in court" to collect a tax, as contemplated by this section. But, since the argument, the

Supreme Court, in the Russell Case, supra, has held that an identical case was barred by an identical statute.

(4) "But, only if begun' (1) within six years after the assessment of the tax." The tax was assessed in 1920, and the suit brought in 1927. This section covers this case, and this action is barred.

It is argued that, throughout all the statutes, Congress has expressly provided that in case of a false or fraudulent return, or in case of a failure to file a return, the tax may be assessed, or a "proceeding in court for the collection of such tax may be begun without assessment at any time"; that therefore such a limitation should be read into 278(d). It is probably true that the government could now maintain this suit, if the assessment had not been made in 1920; and probably true that, if the assessment had never been made, it could now be made. If it is true, it is unfortunate. But it still remains true that this is not a suit "without assessment," and is therefore not within the savings clause. It is still true that Congress did not except from 278(d) cases where an assessment was made without return. There may have been good reasons why Congress did not want the government to have unlimited time to bring a suit, after the department knew the amount of tax due and assessed it; but, whether that be true or no, Congress, and not the courts, must be asked to amend the statutes. If it should be suggested that the six years provided in the 1926 law had elapsed when the 1926 statute was passed, and that it is unfair to bar a claim of the government without notice, it may be answered again that it was for Congress to enact a saving clause if one were desired. The power of Congress to enact a statute barring suit by the government, without a saving clause as to claims thereby automatically barred has not been challenged, either here or in the court below, and need not be considered.

We conclude that this action is barred by the statute. Questions argued in the cross-appeal need not be discussed, except to say that the provisions of section 280 (Act 1926; 26 USCA § 1069), providing for assessment against transferees, are cumulative, and do not bar this suit. Over and beyond distraint and statutory proceedings in court, there exists the plenary powers of courts of equity. Updike v. U. S., 8 F.(2d) 913 (8 C. C. A.); U. S. v. Armstrong, 26 F.(2d) 227, (8 C. C. A.). Such remedies are cumulative, and the existence of a statutory remedy does not bar this suit. Dollar Savings Bank v. U. S., 19 Wall. (86 U. S.) 227, 22 L. Ed. 80; sec-

tion 1122(b), Revenue Act 1926 (44 Stat. 121). Section 280, enacted first in 1926, limits the period for assessment against transferees, but does not limit court proceedings against them. Since 280 was enacted by the same Congress as enacted new section 278(d), it fortifies our conclusion and that of the Supreme Court in the Russell Case, to wit, that 278(d) applies to transferees. Congress was legislating on the subject, and covered limitations on assessments (but not suits) against transferees, in 280, and covered suits (but not assessments) against transferees in 278(d). No assessment has been made against the transferees herein as suggested by counsel for appellees; but we need not consider here any question of the limitation of time for such assessment under 280, or the limitation of a proceeding in court after such assessment.

The decrees of the court below are affirmed on both appeals.