UNITED STATES. v. ARMSTRONG et al.
KEATON et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 20, 1928.

Nos. 8002, 8007.

1. **Corporations** ☞544(2)—Creditors of solvent corporation have no lien on its property, and no trust relation exists with respect to corporation's property.

Creditors of a solvent corporation have no lien on its property, and no trust relation exists with respect to property of such corporation in any true sense.

2. **Internal revenue** ☞27(2)—Tax retroactively levied after corporation's assets were distributed to stockholders was potential liability of corporation of which stockholders must take notice.

Income and excess profits tax, subsequently and retroactively levied after corporation sold assets and distributed proceeds to stockholders, was potential liability of corporation, of which stockholders must take notice, and notice of potential levy was notice at time of distribution of last installment to stockholders that stockholders might be required to restore sufficient amount of money received to liquidate tax.

3. **Internal revenue** ☞27(2)—Where corporation distributing assets to stockholders retaining amount insufficient to pay tax retroactively levied subsequently, equity must deal with stockholders as stockholders of insolvent corporation for purposes of collecting tax.

Where corporation sold its assets and distributed proceeds to stockholders, retaining amount which was insufficient to pay income and excess profits tax subsequently and retroactively levied, court of equity must deal with stockholders as stockholders of defunct and insolvent corporation for purposes of collection of such tax.

4. **Equity** ☞59—Equality is equity.
Equality is equity.

**5. Equity ⬥117—Defendant stockholders, not answering in suit to recover tax against corporation, waived question of bringing in all stockholders.**

Defendant stockholders, not answering in suit to recover balance of income and excess profits tax against corporation, waived question of bringing in all stockholders.

**6. Courts ⬥351½—In suit against some stockholders to recover tax against corporation, where two defendants filed no answer, and statute of limitations had run as to other stockholders, court properly refused to dismiss suit because all stockholders were not parties (Equity Rules 25, 39, 43).**

In suit against only 16 of 63 stockholders of corporation, six of which were served, to recover balance of income and excess profits tax due from corporation, assets of which had been distributed to stockholders, in which stockholder most largely interested and another filed no answer, and where statute of limitations had run as to all other stockholders before time of hearing, court properly disposed of matter as to all parties before court, instead of dismissing bill because all stockholders were not made parties, under Equity Rules 25, 39, and 43, relating to parties.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the United States of America against R. E. Armstrong, J. R. Keaton, and others, stockholders in the Wild Cat Jim Oil Company, to recover a balance of income and excess profits tax for the year 1918. From the decree and judgments, the United States appeals, and defendants also appeal. Affirmed on both appeals.

A. J. Ward, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C. (Roy St. Lewis, U. S. Atty., and William P. Kelley, Asst. U. S. Atty., both of Oklahoma City, Okl., and C. M. Charest, General Counsel Bureau of Internal Revenue, and I. R. Blaisdell and Henry A. Cox, Sp. Attys. Bureau of Internal Revenue, all of Washington, D. C., on the brief), for the United States.

C. B. Cochran, of Oklahoma City, Okl., for Armstrong et al. and Keaton et al.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

SCOTT, District Judge. On November 4, 1924, the United States filed its bill in equity against R. E. Armstrong and fifteen others, stockholders in Wild Cat Jim Oil Company, to recover a balance of income and excess profits tax for the year 1918. Wild Cat Jim Oil Company, during and after 1918, was an Oklahoma corporation. Its capital stock was divided into 220 shares. At all times material to the controversy it had 63 stockholders. Its entire capital was invested in an oil and gas lease in Carter county, Okl. In March, 1918, it sold the lease for a sum netting $46,045, one-fourth to be paid in cash, and the balance in installments, one-fourth in two, four, and six months, respectively. These payments were not all made in the exact amount stated; the last payment amounting to $12,500, was made October 3, 1918. Following the original cash payment, the corporation undertook to liquidate, and, after disbursing expenses, distributed the balance of the payment among its stockholders. It did likewise with the second and third installments. When the last installment was received, the president of the corporation applied to the Internal Revenue Collector of the District for information as to the amount of income and excess profits tax for the corporation for the year 1918, in order that there would be withheld a sufficient sum to pay the same. The Internal Revenue Collector informed the president and secretary of the corporation that the federal income and excess profits tax would be about $3,000, but that, in order to be safe, the corporation should withhold from distribution the sum of $3,500. The corporation withheld from distribution that sum, and the balance was distributed.

On February 24, 1919, what is known as the 1918 federal income and excess profits tax law was passed and approved, retroactively increasing the taxes for the year 1918. On March 15, 1919, the corporation filed a tentative federal income and excess profits tax return for the year 1918, in which, calculated at the rates prescribed by the Act of February 24, 1919 (40 Stat. 1057), the federal income and excess profits taxes were estimated at $12,000. By a final return on June 3, 1919, this tax was found to be $13,068.94. The $3,500 being paid, there was left a balance of $9,568.94.

The corporation was not dissolved by lapse of time or judicial decree, but in 1922 its charter was canceled by state authorities for failure to pay license tax.

Of the 63 stockholders owning 220 shares of stock, 19 owning 122 shares were at the time of the institution of the suit residents of Oklahoma City, in the Western district of Oklahoma, the district in which the suit was brought; 21 other stockholders, owning 61 shares of stock, were residents of the Eastern district of Oklahoma. Instead of proceeding against all the stockholders, the government named in its bill as defendants 16 only, R. E. Armstrong, S. P. Berry, Geo., W. Clark, J. R. Keaton, J. S. Ross, D. A. Richardson, and

10 others. Of the 16, the 6 just named only were served. The foregoing facts appear without controversy in the record. In fact, there is no controversy over any facts in the record.

The bill did not state why other stockholders were not made parties "as that they are not within the jurisdiction of the court, or cannot be made parties without ousting the jurisdiction," as required by Equity Rule 25.

Twenty days after the bill was filed, defendant J. R. Keaton filed a demurrer, stating three grounds: First, that the cause of action alleged was barred by the statute of limitations; second, that the bill did not state a cause of action against the defendant; and, third, that the bill was fatally defective, in that necessary parties were not made defendants. On January 29, 1925, D. A. Richardson, defendant, filed a motion to dismiss upon two grounds: First, that the bill does not state facts sufficient to constitute a cause of action; and, second, that the bill shows upon its face that the cause of action is barred by the statute of limitations. On September 21, 1925, the demurrer being treated as a motion to dismiss, and the motion to dismiss, were submitted and overruled, and thereupon defendants Clark, Keaton, Ross, and Richardson filed separate answers. We refer to the contents of the answers only so far as they deal with the questions presented on the defendants' appeal.

The answering defendants plead that there is a defect of parties defendant; that the bill names only the 16 stockholders referred to, and some of those are not served, and no bona fide effort to obtain service has been made; that there are 45 other stockholders, none of whom have been made parties, and that no reason why the above-mentioned stockholders have not been made defendants has been pleaded. The answers pray that plaintiff be required to bring in the other defendants, and that, in the event it would be held that there is any liability upon the answering defendant, the decree against him be only for such proportionate part of the amount claimed as would have been withheld from him by the corporation had it retained in its treasury a sufficient sum to pay the full amount of said tax.

As stated, the facts in the case were without dispute, and on the trial the District Court entered a decree embodying several judgments against the respective defendants served for that proportionate part of the delinquent portion of the tax which each of the six defendants sued and served would have been required to pay if each stockholder had

paid his pro rata part, together with interest on said respective sums at the rate of 1 per cent. a month from June 2, 1924.

The amounts of the several judgments are as follows:

| Name. | Principal Amount of Said Percentage. | Interest at 1 Per Cent. from June 2, 1924. | Total. |
| --- | --- | --- | --- |
| R. E. Armstrong | $1,635.39 | $556.03 | $2,191.42 |
| S. P. Berry..... | 130.50 | 44.37 | 174.87 |
| Geo. W. Clark.. | 741.57 | 252.13 | 993.70 |
| J. R. Keaton.... | 587.25 | 199.67 | 786.92 |
| D. A. Richardson | 304.50 | 103.53 | 408.03 |
| J. S. Ross...... | 174.00 | 59.16 | 233.16 |

From the decree and judgments as stated, the United States appeals. Counsel for the government assigns ten errors. However, counsel do not argue these errors as assigned, but at the close of the assignment content themselves with laying down the general proposition as follows:

"There is but one principal question raised in this appeal by complainant, and that is—Whether complainant is entitled to a decree against the six defendants who are in court, based upon the theory that each one of said defendants is severally liable to the corporate tax to the full amount of the liquidating dividend which he received; or is each defendant's liability for said corporate tax discharged by the payment of such proportion of the liquidating dividend received by him as the amount of the corporate tax bears to the total liquidating dividend distributed to all the stockholders?"

The defendants also appeal from the judgment, and, while citing a number of errors, content themselves with the argument of two propositions only, the first of which is intended as a negation of the government's proposition just quoted, and is as follows:

"A creditor has no lien on the assets of a corporation which have been distributed to the stockholders, but only has the right in common with other creditors to have such assets decreed to be a trust fund and administered by a court of equity for the benefit of the creditors first, and thereafter for the stockholders. This trust can only be impressed upon assets of the corporation which are distributed on dissolution or during the insolvency of the corporation, or when such distribution creates a condition of insolvency."

The defendants' second proposition is that "all of the stockholders of the corpora-

tion were necessary and proper parties to the suit," and therefore that in the instant case the government's bill should have been dismissed.

We shall consider and discuss the proposition argued on the government's appeal and the first proposition urged on the defendants' appeal together, and thereafter consider the second question raised by the defendants' appeal.

Counsel for the government seem to rely principally upon the cases of Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885, and Ogilvie et al. v. Knox Insurance Co. et al., 22 How. 380, 16 L. Ed. 349. These were cases in which the respective plaintiffs had obtained judgments against the corporations involved, had executions issued which were returned nulla bona, and thereafter the judgment creditor filed creditor's bill against certain stockholders who had subscribed for stock but had not paid their subscriptions. In these cases the rights sought to be reached were debts due the corporation. These subscriptions were the property of the corporation, but were of such intangible character as to be beyond the reach of the common-law writ of execution. The remedies sought in these cases were mere substitutes for the ordinary garnishment, often resorted to under state statutes. A number of decisions of state courts are cited, but we find little aid in these, as the procedure in the state courts so frequently differs from the procedure in the United States courts of equity. Neither do we think the case of Converse v. Hamilton, 244 U. S. 243, 32 S. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292, an authority in the present instance. That was a suit brought by the receiver of a corporation in behalf of creditors against a stockholder to enforce a statutory liability after assessments had been duly levied aggregating 36 and 64 per cent. of the par value of their respective shares. The action was at law under a state statute, and we think has no relevancy to the case in hand.

[1] It was contended by the government in oral argument that the so-called trust fund doctrine was applicable, and that under that doctrine the entire amount distributed by the corporation among its stockholders must still be considered such a trust fund, and the stockholders receiving the same liable to the full extent of all dividends. Without doubt some of the earlier federal decisions give an apparent scope and observance to the trust fund doctrine not recognized in later decisions. It has now become well settled that the creditors of a solvent corporation have no lien upon its property, and that no trust relation exists with respect to the property of such corporation in any true sense. The discussion of the question in McDonald v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022, enlightens the subject. It is there said:

"The complainant bases his right to recover in this suit upon the theory that the capital of the corporation was a trust fund for the payment of creditors entitled to a portion thereof, and having been paid in the way of dividends to the shareholders that portion can be recovered back in an action of this kind for the purpose of paying the debts of the corporation. He also bases his right to recover upon the terms of section 5204 of the Revised Statutes [12 USCA § 56].

"We think the theory of a trust fund has no application to a case of this kind. When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation. No general creditor has any lien upon the fund under such circumstances, and the right of the corporation to deal with its property is absolute so long as it does not violate its charter or the law applicable to such corporation. * * *

"These cases, while not involving precisely the same question now before us, show there is no well-defined lien of creditors upon the capital of a corporation while the latter is a solvent and going concern, so as to permit creditors to question, at the time, the disposition of the property.

"The bank being solvent, although it paid its dividends out of capital, did not pay them out of a trust fund. Upon the subsequent insolvency of the bank and the appointment of a receiver, an action could not be brought by the latter to recover the dividends thus paid on the theory that they were paid from a trust fund, and therefore were liable to be recovered back.

"It is contended on the part of the complainant, however, that if the assets of the bank are impressed with a trust in favor of its creditors when it is insolvent, they must be impressed with the same trust when it is solvent; that the mere fact that the value of the assets of the corporation has sunk below the amount of its debts, although as yet unknown to anybody, cannot possibly make a new contract between the corporation and its creditors. In case of insolvency, however, the recovery of the money paid in the ordinary way without condition is allowed, not on the ground of contract to repay, but because the money thus paid was in equity the

money of the creditor; that it did not belong to the bank, and the bank in paying could bestow no title in the money it paid to one who did not receive it bona fide and for value. The assets of the bank while it is solvent may clearly not be impressed with a trust in favor of creditors, and yet that trust may be created by the very fact of the insolvency and the trust enforced by a receiver as the representative of all the creditors. But we do not wish to be understood as deciding that the doctrine of a trust fund does in truth extend to a shareholder receiving a dividend, in good faith believing it is paid out of profits, even though the bank at the time of the payment be in fact insolvent. That question is not herein presented to us, and we express no opinion in regard to it. We only say, that if such a dividend be recoverable, it would be on the principle of a trust fund.

"Insolvency is a most important and material fact, not only with individuals but with corporations, and with the latter as with the former the mere fact of its existence may change radically and materially its rights and obligations. Where there is no statute providing what particular act shall be evidence of insolvency or bankruptcy, it may be and it sometimes is quite difficult to determine the fact of its existence at any particular period of time. Although no trust exists while the corporation is solvent, the fact which creates the trust is the insolvency, and when that fact is established at that instant the trust arises. To prove the instant of creation may be almost impossible, and yet its existence at some time may very easily be proved. What the precise nature and extent of the trust is, even in such case, may be somewhat difficult to accurately define, but it may be admitted in some form and to some extent to exist in a case of insolvency.

"Hence it must be admitted that the law does create a distinction between solvency and insolvency, and that from the moment when the latter condition is established the legality of acts thereafter performed will be decided by very different principles than in a case of solvency. And so of acts committed in contemplation of insolvency. The fact of insolvency must be proved in order to show the act was one committed in contemplation thereof.

"Without reference to the statute, therefore, we think the right to recover the dividend paid while the bank was solvent would not exist."

The foregoing doctrine is also very clearly discussed by Judge Lurton, with whom concurred Judges Taft and Swan, in Law-

rence v. Greenup, 97 F. 906. This was by the Circuit Court of Appeals for the Sixth Circuit. The same doctrine was very clearly restated by Senior Circuit Judge Sanborn in Ratcliff v. Clendenin (C. C. A.) 232 F. 61.

[2, 3] Now, in the instant case it will be recalled that, at the time of the distribution among stockholders of each of the installments paid for the lease, the corporation was entirely solvent. At the time the last installment was distributed, it had no liability other than for the tax payable under existing law. Inquiry was made to ascertain the amount of that tax, and the amount was approximately learned. Ample funds were reserved to meet that requirement, and in these circumstances each of the stockholders in good faith received their respective shares of the moneys distributed. The first fact which created any condition of insolvency upon the part of the corporation was the levy of the tax under the law approved February 24, 1919, nearly five months after all proceeds of the lease had been entirely distributed. However, under the decision of this court in Updike v. United States, 8 F.(2d) 913, this tax as subsequently and retroactively levied was a potential liability of the corporation of which the stockholders must take notice. And notice of that potential levy was notice at the time of the distribution of the last installment in October, 1918, that the stockholders might be required to restore sufficient of the money received to liquidate the tax. In these circumstances, and laying aside for the moment the second question, we think that a court of equity must deal with the defendants as stockholders of a defunct and insolvent corporation for the purposes of the collection of this tax.

[4-6] The second question then occurs, whether the United States could maintain the present bill against 6 stockholders, when there were 63 stockholders, and many other than the defendants residents of the state of Oklahoma, and some of them residents of the Western federal district of Oklahoma.

The trial court seems to have been of opinion that all stockholders were necessary parties; that is to say, under the old chancery rule they would have been necessary parties, and that the bill might well have been dismissed. However, the trial court seems to have found such circumstances present that, under the equity rules and the more modern practice, the case might proceed to termination as against the parties before the court. We are inclined to the opinion that the trial court was correct in its assumption that all stockholders should have been made parties.

It must be considered that the plaintiff's bill is not brought under any special statute, but proceeds upon broad equitable principles. The stockholders were not the debtors of the corporation, and plaintiff was not proceeding after judgment to subject the property of the corporation in the ordinary sense to execution. The bill was drawn, and the case proceeded upon the theory that there were equities present adequate to a court of equity in constructing and impressing a trust upon a certain subject. Clearly the subject was one in which all of the stockholders were directly interested. The equities under consideration were equities affecting every stockholder in proportion to the amount he had received in the distribution of corporate funds. Now, as the bill proceeded entirely on equitable principles, a court of equity administering relief is naturally controlled by those principles. In this connection it is appropriate to recall one of the fundamental maxims of equity, and that is, "Equality is equity." The principle of that maxim seems to have controlled courts of equity in such cases in the past. In an early day, Mr. Justice Curtis in Shields v. Barrow, 17 How. 130, 139 (15 L. Ed. 158) very clearly states the principle of equity practice:

"The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

In Sioux City Terminal Railroad & Warehouse Co. v. Trust Co., 82 F. 124, Circuit Judge Sanborn, speaking for this court, said:

"The general rule in chancery is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have no interest in the litigation between the immediate parties, but who have an interest in the subject-matter of the litigation, which may be conveniently settled therein, may be, made parties to it. The former are termed the necessary, and the latter the proper, parties to the suit. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in parties beyond their jurisdiction by publication, has resulted in a modification of this rule, and a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party. Every indispensable party must be brought into court, or the suit will be dismissed. The complainant may join every proper party, and he must join every proper party who would have been a necessary party under the old chancery rule, unless his joinder would oust the jurisdiction of the court as to the parties before it, or unless he is incapable of being made a party by reason of his absence from the jurisdiction of the court or otherwise. If, however, such a party is incapable of being made a party, or if his joinder would oust the jurisdiction of the court as to the parties before it, the suit may proceed without him, and the decree will not affect his interests."

In Updike v. United States, supra, this court in a similar case said that "all the stockholders must be made parties defendant."

We are not unmindful of course of the equity rules which in proper cases would modify the strictness of the foregoing rule. Equity Rules 25, 39, and 43.

"Equity Rule 25. Fourth, if there are persons other than those named as defendants who appear to be proper parties, the bill should state why they are not made parties—as that they are not within the jurisdiction of the court or cannot be made parties without ousting the jurisdiction."

"Equity Rule 39. In all cases where it shall appear to the court that persons, who might otherwise be deemed proper parties to

the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

"Equity Rule 43. Where the defendant shall by his answer suggest that the bill of complaint is defective for want of parties, the plaintiff may, within fourteen days after answer filed, set down the cause for argument as a motion upon that objection only; and where the plaintiff shall not so set down his cause, but shall proceed therewith to a hearing notwithstanding an objection for want of parties taken by the answer, he shall not at the hearing of the cause, if the defendant's objection shall then be allowed, be entitled as of course to an order to amend his bill by adding parties; but the court shall be at liberty to dismiss the bill or to allow an amendment on such terms as justice may require."

Applying the foregoing rules to the case in hand, it is difficult to see why they would not have required a dismissal of the plaintiff's bill. There was no allegation in the bill that the absent stockholders were not within the jurisdiction of the court, or could not be made parties without ousting the jurisdiction. This defect in the bill was aptly taken advantage of by the answering defendants, and no advantage was taken of Rule 43 by the plaintiff. The cause proceeded to a hearing, and, while the court seems to have been of opinion that the bill might well have been dismissed, in the circumstances the court retained it and proceeded in the cause without bringing in the absent parties, but proceeded to a hearing in the cause without prejudice we think either to the parties before the court or the absent parties. At this point it is permissible to suggest that two of the parties before the court, indeed, the one party most largely interested and against whom judgment went for nearly one-half of the recovery, filed no answer in the District Court. These two defendants enter their initial protest by joining in the appeal to this court. They we think waived the question of bringing in all stockholders, and as to them the cause might well proceed to a final hearing. Such being the situation, and the further patent fact that the statute of limitations had run as to all other stockholders before the time of hearing, the trial court no doubt thought that no prejudice could accrue to a final disposition of

26 F.(2d)—15½

the matter as to all parties before the court. And in such decision we concur. From what we have said, it follows that the case must be affirmed on both appeals.

Affirmed.