**RUSK et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 4557.

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1931.

John E. Hughes, of Chicago, Ill., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and James K. Polk, Jr., and Harold F. Noneman, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is a petition for review of an order of the Board of Tax Appeals pursuant to sections 1001, 1002, and 1003 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110 (26 USCA §§ 1224–1226). This order affirmed a determination of the Commissioner that there was a deficiency in income due from Margaret Rusk for the year 1923 in the sum of $9,738.91.

The Board of Tax Appeals found that on March 1, 1913, Margaret Rusk owned certain real estate in Chicago, Ill. It was triangular in shape, having the following approximate frontages: 550 feet on Lincoln avenue, 425 feet on Robey street, and 200 feet on Belle Plaine avenue. It was vacant land except for two old buildings. One was a three-story brick building located on the corner of Lincoln avenue and Robey street, having a store on the first floor, a flat on the second, and a dance hall on the third. The other was a two-story frame building located on the corner of Lincoln and Belle Plaine avenues, and contained a store and some flats. The improvements, such as paving, sewers, water, and gas, had been made prior to March 1, 1913, although these were not paid for until after that date.

Of the three streets named, Lincoln avenue was the most important so far as the property referred to was concerned. On March 1, 1913, there were on Lincoln avenue, opposite the Rusk property, about eight buildings, of which five were only one story each. At that time there were no buildings on Belle Plaine avenue except a frame cottage, and Robey street was not built up, nor has it ever been a business street.

The Board further found that the fair market value of the property which is in controversy was, on March 1, 1913, not greater than $100,000.

On January 15, 1923, Margaret Rusk sold this property to Jacob Horwitz, who was acting on behalf of himself and his partner, Norman Peters, for $250,000. An amount of $1,000, which Horwitz had deposited with Mrs. Rusk in September, 1922, as earnest money, was at the time of the sale applied on the purchase price. At the same time she received from Horwitz an additional sum in cash of $29,000, and also a mortgage and five notes—one for $20,000, maturing six months after date, and four for $50,000 each, maturing on or before three years after date. A mortgage on the entire property was given by Horwitz and his wife to Mrs. Rusk. Later the North Center Building Corporation was formed for the purpose of promoting the construction of a store and office building upon a part of the ground. Horwitz and Peters in 1923 controlled all the capital stock of this corporation, amounting in par value to $550,000.

Construction loans totaling $400,000 were obtained in anticipation of the building program, and the parties loaning the money required that Margaret Rusk release her mortgage on that part of the property on which the building was to be constructed, in order that they might take a first mortgage on it, which she did.

On June 14, 1923, Horwitz paid Mrs. Rusk, out of the $400,000 loan which had been obtained, an amount of $120,000 in cash; and he and his wife executed to Mrs. Rusk two notes, dated May 1, 1923, in the aggregate sum of $100,000—one for $35,000, due on or before one year after date, and the other for $65,000, due on or before two years after date. They also executed to Mrs. Rusk a mortgage on the north 225 feet of the tract of land in controversy securing said two notes. Thereupon the five original notes calling for $220,000 were delivered to Horwitz by Mrs. Rusk and canceled.

Shortly thereafter the Lincoln-Robey Building Corporation was organized for the purpose of developing the north 225 feet of the real estate in controversy, and this corporation raised $1,200,000 for that purpose. A first mortgage of $900,000 and a second mortgage were placed on it. On November 5, 1924, $90,000 of the $100,000 owing to Margaret Rusk was paid to her, and she released the mortgage thereon which had been

given to her by Horwitz and his wife. In lieu thereof she accepted the note of Horwitz and Peters for the remainder due her, and received as security therefor second mortgage bonds of Lincoln-Robey Corporation of the par value of $20,000.

On December 31, 1924, there was due Margaret Rusk on the note of Horwitz and Peters, including interest, the sum of $16,090.

In her tax return for the year in controversy, which was rendered upon the cash receipts and disbursements basis, Margaret Rusk claimed a profit of $43,413.72 upon the sale of the property in controversy, as follows:

| | | |
|---|---|---|
| Selling value of property | | $250,000.00 |
| Less: | | |
| March 1, 1923, value of property | $200,000.00 | |
| Subsequent improvements.. | 5,336.28 | |
| Attorney fees in matter of sale | 1,250.00 | 206,586.28 |
| | | $ 43,413.72 |

Respondent held that the fair cash market value of the property in controversy on March 1, 1913, was $100,000, and calculated a sale profit of $147,295.48.

Taxpayer's petition for review was filed December 19, 1927, and she died July 7, 1928. Hearing before the Board was had December 3, 1929, at which time respondent moved to substitute for decedent the executors of her estate. This was done, without prior notice to petitioners, on June 25, 1930, and on the same day the findings of fact were filed.

We are first met with the objection on the part of respondent that this court is without jurisdiction to entertain this appeal by virtue of section 1002 (a), Revenue Act of 1926, c. 27, 44 Stat. 110 (26 USCA § 1225 (a), which read as follows:

"Sec. 1002. Such decision may be reviewed—

"(a) In the case of an individual, by the Circuit Court of Appeals for the circuit whereof he is an inhabitant, or if not an inhabitant of any circuit, then by the Court of Appeals of the District of Columbia."

It is respondent's contention that, inasmuch as Mrs. Rusk died prior to the date of the hearing by the Board of Tax Appeals of decedent's petition for review, she cannot be considered as an inhabitant of this circuit at the time of the hearing, and hence respondent argues that the Court of Appeals of the District of Columbia has exclusive jurisdiction. With this contention

we cannot agree. Of course, at the time of the hearing Mrs. Rusk had no earthly habitation, but the situs of her property was still in this circuit, and her executors, who are now petitioners, are residents of this circuit. We see no reason why the word "individual" as used in the first clause of section 1002 (a), supra, should not be construed to refer to the executors as well as to decedent; for, while they are acting in their official capacity as executors, they are nevertheless individuals. It is inconceivable that Congress intended that the Court of Appeals of the District of Columbia should have exclusive jurisdiction of all petitions for review of orders of the Board of Tax Appeals where taxpayer dies prior to the hearing by the Board and such hearing is afterwards prosecuted by the executors of such estate. Respondent's motion to dismiss the petition to review is overruled.

Petitioners contend that upon the death of Mrs. Rusk the Board of Tax Appeals lost jurisdiction of this case, and that it had no authority to substitute her executors and executrix as petitioners. This contention is based upon the fact that, at common law, upon the death of a litigant the action abated if the cause of action did not survive; and, if the cause of action did survive, it was necessary to bring a new suit against the executors or administrators, if it was desired to continue the action.

The doctrine of abatement of causes of action on account of death applies to actions in court. The proceedings before the Board of Tax Appeals cannot be considered as an action in court, for that body is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the board has been had and decided. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918.

It cannot be doubted that the Board, by the act of Mrs. Rusk, acquired jurisdiction of the subject-matter for the purposes enjoined by statute. If from any standpoint the proceeding could be considered as a case in court, we think it was not abated by Mrs. Rusk's death to the extent that it would require a new action. Clarke, Adm'r, v. Mathewson, 12 Pet. (37 U. S.) 164, 9 L. Ed. 1041. Of course, the death of Mrs. Rusk, upon being brought to the attention of the court, necessarily required a temporary cessation of action until the representatives of the es-

tate could be substituted. This was done, and concededly without formal notice. But notice to the executors was not necessary to give the Board jurisdiction of the subject-matter, for this was already acquired. The executors and executrix, immediately after the substitution and without objection, submitted to the jurisdiction of the Board, and within the time allotted by law filed their petition in this court to review the Board's decision. In this they waived the notice which otherwise might have been required.

If it be the law, as petitioners contend, that the death of Mrs. Rusk abated the proceedings before the Board, and that a revival can only be had by separate suit, a very serious question might confront petitioners as to their relief. There is a possibility that the government might not institute suit for the purpose of determining the correctness of the Commissioner's finding. Indeed, there would be no necessity for it to do so, for the Commissioner's finding is presumed to be correct until the contrary is proved. The proceedings before the Board were not instituted by the government, but by decedent. If petitioners were required to file a new petition for a redetermination before the Board, the element of time might seriously interfere. However, we do not decide this question; but we hold that the action of the Board was correct in permitting the substitution of parties.

■ It is contended by petitioners that the Board of Tax Appeals erred in finding that Mrs. Rusk realized a profit of $147,295.48 in the year 1923 from the sale of the real estate in controversy; that such finding is unsupported by any evidence; and that it is contrary to the uncontradicted evidence of Jacob Horwitz, who testified with relation to the two notes aggregating $100,000 as follows: "They did not have a readily, realizable market value in the year 1923. In my judgment, an execution levied against me and my wife would not have resulted in the seizure of saleable property sufficient to pay the balance of these notes in 1923, except as a levy on this real estate which we are talking about. I didn't have cash or tangible assets which could be taken on an execution."

In this contention petitioners proceed upon the theory that this controversy is governed by section 202 (e) of the Revenue Act of 1921, 42 Stat. 227, 230, which relates to exchanges of property for other property which has no readily realizable market value. They say that the exchange involved

here consists in the trade by Mrs. Rusk of the notes aggregating $220,000, which she received as part purchase price of the land, for the two notes aggregating $100,000 and the cash payment of $120,000, which she received from Horwitz and his wife. We think this position is not tenable. This latter transaction was merely a refinancing of the original sale as a matter of accommodation to Horwitz in his building project, and we think that both should be treated as one transaction. Indeed, Mrs. Rusk so treated them in her return to the collector of internal revenue, and calculated her net gain on the entire transaction at $43,413.72.

■ Under these circumstances we regard the following sections as applicable:

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; * * *

"(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a); but—

"(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value." Revenue Act of 1921, c. 136, 42 Stat. 229.

■ The questions presented to us are: What was the fair cash market value of this land in controversy on March 1, 1913, and what was the fair cash market value of the consideration which she received for it? Inasmuch as Mrs. Rusk in 1923 received $150,000 in cash, the second question resolves itself into: What was the fair cash market value of the two notes of Horwitz and wife which aggregated $100,000?

■ It will be observed that Mrs. Rusk, when she made her return, in effect stated these two notes were worth their face value, for she charges herself with the entire purchase price of $250,000. She further states in this return that on March 1, 1913, the property which she sold to Horwitz was worth $200,000. The Commissioner accepted her valuation of the consideration which she received for the sale of the property, but placed the value of the real estate on March 1, 1913, at $100,000. This valuation of the

real estate by the Commissioner was supported by competent evidence before the Board of Tax Appeals, and it sustained the Commissioner's finding in this respect. That valuation is not questioned by petitioners, and this one item accounts for the full amount of the deficiency tax which was assessed in this case. With this finding of fact we are bound, but petitioners seek to parry the effect of the reduced valuation of the real estate on March 1, 1913, by attempting to show that the two notes aggregating $100,000, which represented deferred payments, were of no value, and by this means they sought to discredit the finding of the Commissioner. The Commissioner's finding in this respect was based upon decedent's admission under oath. The finding of the Board of Tax Appeals was, in effect, a holding that the testimony of Horwitz was not sufficient to overcome decedent's admission. This, too, is a decision upon a question of fact, which we are not authorized to disturb.

Petitioners contend further that the value of promissory obligations may not be included in taxable income until paid, and cites in support thereof Bedell v. Commissioner (C. C. A.) 30 F.(2d) 622. In that case the promise to pay was conditional upon the completion of the transaction of sale, and nothing was due unless title passed, which might never happen.

We regard the instant case as governed by the principle laid down in Corbett v. Burnet, Commissioner, 60 App. D. C. 202, 50 F.(2d) 492.

The order of the Board of Tax Appeals is affirmed.