## COMMISSIONER OF INTERNAL REVENUE v. KELLER.

### SAME v. PERBOHNER.
### Nos. 4694, 4695.

Circuit Court of Appeals, Seventh Circuit.
June 14, 1932.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. H. Yeatman, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

John E. Hughes, of Chicago, Ill., for respondents.

Before EVANS and SPARKS, Circuit Judges, and WILKERSON, District Judge.

These petitions involve income and profits taxes for the years 1920, 1921, 1922, and 1923 in respective amounts of $1,816.90, $2,496.50, $456.06, and $689.16, plus interest. The statutes involved are Revenue Act of 1926, c. 27, 44 Stat. 61, § 280 (a) (1), (f), 26 USCA § 1069 (a) (1), (f); and Act of June 28,

**500**

1919, c. 32, Illinois R. S. (Cahill's 1929), § 23, (2), which are set forth in the margin.[1]

The causes were consolidated for the purpose of hearings and decisions, and the questions presented arise over the transfer of certain assets to respondents by Wilson Avenue Garage Company, hereinafter referred to as the company. The amounts due and the liability of the company for the above-stated taxes are not controverted.

The Board of Tax Appeals found the following facts:

Respondents are residents of Chicago, and prior to August 1, 1925, they were equal owners of the entire capital stock of the company, consisting of 500 shares, par value of $50,000, which company was operated as a storage garage in Chicago under a lease which provided for a rental of $1,000 per month and expired June 30, 1927. For four years preceding August 1, 1925, certain space in the garage was used as a repair shop under a lease from respondents to Clifford and Glabaznya, who operated the repair shop independently of the garage.

On August 8, 1925, respondents, as of August 1, 1925, sold all the capital stock of the company to Clifford and Glabaznya and one Bauer for $20,000, which was all paid within one year. At the same time respondents executed and delivered to said purchasers the following:

"The undersigned hereby guarantee that the Wilson Avenue Garage Company, a corporation, was not on the first day of August, A. D. 1925, indebted to any person, copartnership or corporation in any sum whatever, except current bills which the undersigned hereby agree to pay. This statement is made to induce Paul Bauer, Charles W. Clifford and Joseph R. Glabaznya to purchase the shares of capital stock of said corporation owned by us and to pay us the purchase price therefor. Chicago, August 8th, 1925.

"Jacob Perbohner
"Samuel Keller"

Immediately prior to the sale referred to, respondents distributed to themselves certain assets of the company of the value of $38,544.82, consisting of cash, investments, accounts, and notes receivable; and at the time of the sale respondents, pursuant to the agreement which they had signed, paid accounts and notes payable by the company of the aggregate sum of $2,892.37. After the distribution of assets to respondents, as above referred to, the company retained certain office furniture, stationery, tools, fixtures, automobile casings, oils, and one truck, all of the aggregate value of $3,000.

After the sale of the stock of the company by respondents to Bauer, Clifford, and Glabaznya, the two last-named purchasers transferred to the company all the tools and equipment which they had been using in their repair shop, which were of the value of $2,500.

The gross monthly revenue of the company for the year 1925 was about $5,600, and the net income for that year was $3,819.48. Its balance sheet, as of December 31, 1925, showed assets and liabilities each in the amount of $56,550.72. Included in the assets was an item of $43,423.60, which represented good will; and included in its liabilities was capital stock in the sum of $50,000 and undivided profits in the sum of $587.42.

The company continued to do business until its lease expired on June 30, 1927, when the lease was renewed in the name of Clifford and Glabaznya, a partnership, who assumed the company's liabilities, and to whom the assets of the company were transferred. The amount of liabilities thus assumed and the value of the assets so transferred were not proven. The company has not been dissolved, and it has had no assets since June 30, 1927.

A warrant to distrain for the collection of the taxes and interest above referred to was issued against the company and returned unsatisfied. Upon the facts as set forth, the Board found for respondents, and the Commissioner appeals.

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 9, 61:

Section 280. "(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or war-profits tax Act."

"(f) As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

Act of June 28, 1919, p. 312, c. 32, par. 23, Illinois R. S. (Cahill's 1929):

"The directors shall jointly and severally be liable for the debts and contracts of the corporation in the following cases: * * *

"(2) For declaring or assenting to a dividend if the corporation is, or is thereby, rendered insolvent, or its capital is thereby impaired, to the extent of such dividend."

SPARKS, Circuit Judge.

It is contended by the government that the Board of Tax Appeals erred: (1) In not holding that the distribution of assets of the company to respondents, prior to the sale of the company's capital stock, created a condition of insolvency which made respondents, as transferees under the trust fund doctrine, liable for the taxes involved in these proceedings, as recognized in McDonald, Receiver, v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; Ratcliff v. Clendenin (C. C. A.) 232 F. 61; Great Western Mining & Mfg. Co. v. Harris (C. C. A.) 128 F. 321; Lawrence v. Greenup (C. C. A.) 97 F. 906; Illinois R. S., c. 32, par. 25 (Cahill's 1929), subdivision (2). (2) In holding that the agreement of respondents to pay the current bills of the company existing as of August 1, 1925, was not sufficiently broad to include the taxes involved in these proceedings.

The first contention hinges upon whether the distribution of assets to respondents rendered the company insolvent. The burden of proving such insolvency, if it existed, was upon the Commissioner. Revenue Act of 1928, § 602 (adding § 912, to Revenue Act 1924), 45 Stat. 872, 873 (26 USCA § 1229). The Board found as a fact that the distribution referred to did not render the company insolvent, and we think the finding was supported by substantial evidence; hence we are precluded from disturbing it. Rusk v. Commissioner (C. C. A.) 53 F.(2d) 428; Hutchins Lumber & Storage Co. v. Commissioner (C. C. A.) 53 F.(2d) 1016.

In Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220, it was held that the capital stock of a corporation was a trust fund for the payment of its debts: but in later years that doctrine has been held not to apply to a solvent corporation. United States v. Armstrong (C. C. A.) 26 F.(2d) 227; Ratcliff v. Clendenin, supra; Great Western Mining & Mfg. Co. v. Harris, supra; Lawrence v. Greenup, supra.

It is further contended by Commissioner that he is entitled to recover under the Illinois statute, supra, which holds directors liable for debts and contracts of a corporation when they declare or assent to a dividend if the corporation is thereby rendered insolvent or its capital is thereby impaired. Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818; Tudor v. United States (C. C. A.) 56 F.(2d) 64. In relation to questions involving rules of property, federal courts and the Board of Tax Appeals follow the statutes and decisions of the state in which the property involved is located; but as to a question of the kind now under consideration the decisions of the federal courts must prevail. Weiss v. Weiner, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183.

It is next contended by the Commissioner that the government is entitled to recover on the written agreement signed by respondents, in which they promised to pay the current bills of the company which were existent on August 1, 1925. By this agreement the purchasers were protected against all liabilities of the company as of August 1, 1925, which were owing or might become due to any person, copartnership, or corporation. Whether the United States can be considered as included in any of the classes of creditors designated we think it unnecessary to decide. It will be observed that the agreement is twofold in its nature: First, the sellers guarantee to purchasers that there are no existing debts against the company except current bills; second, they then agree to pay all unpaid current bills. The government cannot avail itself of the guarantee, nor does it seek to do so. It may, however, avail itself of sellers' promise to pay current bills, provided its claim can be considered as a current bill. The determination of this contention depends entirely on whether the government's claim for taxes for the years 1920 to 1923 inclusive, which were unknown to exist at the time of the execution of the written agreement referred to and were not asserted by the Commissioner until 1928, can be said to be included within the term "current bills" of the company on August 1, 1925.

The word "current," when used as an adjective, has many and diverse meanings, and its definition depends largely upon the word which it modifies or the subject-matter with which it is associated. When applied to liabilities or bills of account, we think it conveys the idea of time, and refers to the present time or the present passing period; and yet when used in that sense the limitation as to time is not always the same, but is rather controlled by law or by the custom established in relation to the subject-matter then under discussion. We speak generally of current bills, and in most instances we there-

502

by refer to the bills of account which are to be paid during the month; because in ordinary affairs most accounts, other than capital accounts, which are occasioned by the operation of one's business and in the care of one's self and family, are expected to be presented and paid within the month. The expression "current taxes" is indeed a very common one, and unquestionably refers to taxes due or assessed within the present year, because the law requires taxes to be assessed and paid but once each year; a current bank account is one that is subject to present checking; a current periodical refers to one which is published during the present period, whatever that period may be.

We think the parties to the agreement in the instant case used the term "current bills" in the sense to which we have just referred. This view is consistent with the holding of the Board of Tax Appeals, and we are convinced that the ruling is correct.

The taxes sought to be collected in this action were current taxes during the respective years to which they relate, and since those respective years they have been due and owing from the company, notwithstanding the company and respondents were ignorant of their existence; but we think they cannot be considered as current taxes as of August 1, 1925, and thus be brought within the term "current bills" of the company as of that date.

■ The government, if it had so desired, for the purpose of collecting the taxes in controversy could have distrained the property of the company while it was in the company's possession; and if Clifford, Glabaznya, and Bauer had sustained a loss by reason thereof they could have recovered to the extent of that loss on the warranty given them by respondents, and thus the same result would have been accomplished as is now sought by the Commissioner in this proceeding. But the fact that the purchasers could have recovered on respondents' warranty for the taxes collected by the government out of the assets of the company does not authorize the government to sue respondents directly for those taxes after the assets have been disposed of by the company.

■ It is quite obvious that up to the time the agreement was signed by respondents they were not personally liable for the company's taxes. There is no fraud claimed, and it is conceded that respondents acted in good faith. If they became liable by signing the agreement, it is on the theory that, when a contract is entered into for the benefit of a third party, that party may recover on it provided he brings himself within the terms of the promise which he claims was made for his benefit. In such cases the contracts should be construed with at least reasonable strictness against the third party, who seeks to benefit by it.

■ In the instant case the burden is upon the government to establish the fact that its claim for taxes due in 1920 to 1923, inclusive, constituted a "current bill" of the company on August 1, 1925, and in this it has failed.

■ Respondents challenge the right of the Commissioner to appeal from an adverse decision of the Board of Tax Appeals. We think there is no merit in this contention. In Commissioner v. Liberty Bank & Trust Company, 59 F.(2d) 320, decided May 12, 1932, by the Circuit Court of Appeals for the Sixth Circuit, the court, in a very lucid and exhaustive opinion, held that the Commissioner has such right of appeal, and we think the ruling is correct.

Decree affirmed.