Golden C. CHINN, Appellant,
v.
UNITED STATES of America,
Appellee.

No. 7004.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 3, 1955.

Decided Dec. 16, 1955.

L. E. Woods, Jr., Huntington, W. Va. (Campbell, McNeer & Woods, and C. F. Bagley, Jr., Huntington, W. Va., on the brief), for appellant.

Vincent P. Russo, Atty. Dept. of Justice, Washington, D. C., and John R. Morris, U. S. Atty., Clarksburg, W. Va. (H. Brian Holland, Asst. Atty. Gen., and Joseph M. Howard, Atty. Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On April 6, 1954, the grand jury for the Northern District of West Virginia returned a four-count indictment against appellant Golden C. Chinn, charging him with wilful attempts to defeat and evade a large part of his income taxes for the years 1947 to 1950, inclusive, by filing and causing to be filed returns fraudulently understating his net income in each year in violation of Section 145(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b). The amounts of net income and the taxes due thereon, as reported on his returns and as corrected, were alleged to be as follows:

|  | Reported | | Corrected | |
|  | Net Income | Tax | Net Income | Tax |
|---|---|---|---|---|
| Count One (1947).... | $ 951.22 | $ 74.00 | $11,368.79 | $2,821.63 |
| Count Two (1948)... | 2,243.99 | 235.00 | 5,924.93 | 1,022.34 |
| Count Three(1949)... | 3,385.26 | 417.00 | 4,992.54 | 809.02 |
| Count Four (1950)... | 3,813.30 | 590.91 | 4,814.20 | 799.08 |

The trial commenced on February 14, 1955. Before the jury was empaneled, Chinn made a motion to dismiss the indictment on the ground that he had been denied the right to a speedy trial, in violation of the Sixth Amendment to the motion was denied. On February 18, 1955, at the conclusion of its case in chief, the Government moved to dismiss count four of the indictment, and the motion was granted. Chinn then moved for a judgment of acquittal on count three or, in the alternative, that specific items of evidence be withdrawn from the consideration of the jury, and for a judgment of acquittal on counts one and two. These motions, as well as additional motions to withdraw specific items of evidence from the jury's consideration, were denied.

On February 22, 1955, at the close of all the evidence, Chinn renewed his motions for judgment of acquittal, which, again, were denied. On the same day the jury returned a verdict of guilty as to counts one and three of the indictment and of not guilty as to count two. Appellant's motion to set aside the jury's verdict and for a new trial was overruled on April 19, 1955.

Chinn was sentenced to imprisonment for 18 months and fined $3,000 on each of counts 1 and 3, the sentences of imprisonment to run concurrently, the fines to be cumulative. Appeal to us had been duly taken by Chinn.

On this appeal, three questions are presented:

(1) Whether Chinn was denied the right to a speedy trial in violation of the Sixth Amendment of the Constitution of the United States of America.

(2) Whether the judgment of conviction is supported by substantial evidence.

(3) Whether the court unduly restricted Chinn's counsel in his cross-examination of the witness Dickinson.

We find no merit in Chinn's contention that he was denied his right to a speedy trial under the Sixth Amendment to the United States Constitution. Chinn was indicted on April 6, 1954. His trial commenced on February 14, 1955, at Wheeling, West Virginia, before the Honorable Herbert S. Boreman, who was appointed and entered on duty as United States District Judge for the Northern District of West Virginia on August 16, 1954. Chinn was at large under a $5,000 bond. He, at no time, de-

manded or sought an earlier trial on the indictment, and he was tried as soon as the orderly conduct of the business of the court permitted.

■■ This right to a speedy trial is a personal right which may be waived if the accused fails to claim this right timely. The fixing of a date for a criminal trial in the federal courts is largely a matter in the discretion of the trial judge. Nor can we find here any arbitrary, oppressive or vexatious delay which was prejudicial to Chinn's rights. See, Morland v. United States, 10 Cir., 193 F.2d 297, 298; Shepherd v. United States, 8 Cir., 163 F.2d 974, 976, Id., 8 Cir., 191 F.2d 919; McDonald v. Hudspeth, 10 Cir., 113 F.2d 984, certiorari denied 311 U.S. 683, 61 S.Ct. 64, 85 L.Ed. 441; Pietch v. United States, 10 Cir., 110 F.2d 817, 819, certiorari denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414.

■ This brings us to the second question. We think the jury's verdict was supported by substantial evidence. The record in this case, running into many hundred pages, is large and complicated. There were many conflicts in the evidence, involving questions of the credibility of witnesses. On important points, the jury's verdict indicates clearly that these conflicts were resolved against Chinn. To review this record in minute detail would be utterly impracticable. We must, therefore, content ourselves with comments on what we consider to be the record's most salient features.

For the years 1913 to 1941, Chinn filed no returns. He filed a nontaxable return for 1942, a nonassessable return for 1943 and a return that reflected a tax liability of $152 for the year 1944. For the year 1945, he filed a declaration of estimated tax on which he paid $41.75; his final return for the year disclosed no tax liability and $41.75 was refunded to him. His return for 1946 was an "even" or nontaxable return.

The Government employed the increase in net worth plus non-deductible expenditures method of proof to establish the 1947 offense. Proof of the offense for the year 1947 was supported by direct evidence of specific items of unreported income. Proof of the 1949 offense was made only by direct evidence of specific items of unreported income.

For the calendar year 1947, Chinn reported gross receipts from rentals in the amount of $5,535 and a taxable net income of $951.22. A carefully prepared, detailed report by Agent Oxley showed by the net worth method a taxable income of Chinn of $10,401.23, showing a deficiency in unreported income on Chinn's part of $9,450.01 for 1947.

In addition to the net worth method, the Government introduced direct evidence of specific items of unreported income on Chinn's part. Among these items were taxable income from the sale of certain lots in Proctorville, Ohio, the sale of lots in Chesapeake, Ohio, and the sale of certain restaurant equipment to John Angelo. Moreover, in 1946, Chinn built and subsequently operated a potato chip factory. There was conflicting evidence both on the net worth statement of Oxley for 1947, and on the specific items just mentioned. The record affords evidence for the substantial accuracy of Oxley's computations and the jury must have believed Oxley.

It seems at least a bit odd that the only income reported by Chinn for 1947 was income from rentals. Yet, during this year, he seems also to have been rather actively engaged in buying, selling and trading in real estate, buying, selling and trading in restaurant and beer equipment, lending money at interest, and operating a potato chip factory.

The Government's case for the year 1949 involved taxable income, not reported by appellant, totalling $1,068.62, which consisted of a short-term capital gain of $800 from his sale of 1402 Maple Avenue, Kenova, West Virginia, to J. O. Meredith; $180 in interest from W. A. Nixon; $87.86 in interest from Goodwin Preston; and $.76 in interest from J. O. Meredith.

Here again were there sharp conflicts in the evidence. Chinn claimed that

the Nixon interest was paid in 1951. Nixon's testimony, however, refuted this contention. A photostatic copy of the note was admitted in evidence and from an examination of the document it appeared, and the Government contended, that the date on which the $180.00 interest payment was recorded had been tampered with in that the figure "1951" had been superimposed over the figure "1949." Also, Chinn claimed that he received the Preston interest as trustee for a specified woman friend. Preston testified that he made all payments on the note to Chinn. Here, again, it was the province of the jury to resolve questions of credibility and the jury resolved them against Chinn.

In this case, not only were there inconsistencies in Chinn's testimony, but there were a number of suspicious circumstances which well might have influenced the jury in arriving at its verdict. Among these were Chinn's stories of a hoard of concealed cash with his sister, some of which was placed in a jar, covered with parawax and bacon grease and stored in an ice box. Further is Chinn's claim that he made a gift of certain premises to his woman friend, when he actually took from her a note secured by a deed of trust, foreclosed the deed of trust and had title to these premises vested in his own name. There were, too, instances of his taking title, for no satisfactory reason, to property in the names of persons other than himself.

Chinn contended that the agents did not give him credit for cash on hand at the beginning of 1947 and, therefore, did not correctly estimate his net worth as of that date. It might well be that the agents were justified in rejecting Chinn's somewhat incredible claims as to the possession of this money at the beginning of the period.

For cases that seem to uphold our views that there was here adequate evidence to justify the jury's verdict, see United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194; Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127; United States v. Ragen, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Rollinger v. United States, 8 Cir., 208 F. 2d 109; Jelaza v. United States, 4 Cir., 179 F.2d 202; Himmelfarb v. United States, 9 Cir., 175 F.2d 924, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527; Rusk v. Commissioner, 7 Cir., 53 F.2d 428.

Chinn contends that the District Court prejudicially restricted him in his cross-examination of the witness Dickinson with respect to Dickinson's testimony that he recommended a jeopardy assessment against Chinn in 1951. On his direct examination, Dickinson testified that as a result of an investigation he made at the Twentieth Street Bank in Huntington, West Virginia, in 1951, he recommended a jeopardy assessment against Chinn. We find no ground here for a reversal.

■■ The scope and extent of cross-examination is peculiarly within the sound discretion of the trial judge. United States v. Hornstein, 7 Cir., 176 F.2d 217, 220; United States v. Tandaric, 7 Cir., 152 F.2d 3, 6, certiorari denied 327 U.S. 786, 66 S.Ct. 703, 90 L.Ed. 1012; Jelke v. United States, 7 Cir., 255 F. 264, 288. Here, the question whether Chinn had property in his name in excess of the amount of the jeopardy assessment levied against him in 1951, had little relevancy or importance in connection with the charges contained in the indictment.

The judgment of the District Court is affirmed.

Affirmed.